JAMES B. SAFFORD

*v.*

JOHN C. BARBER.

[Decided May 16th, 1908.]

1. When the existence of an adequate remedy at law is made the ground of demurrer to a bill in chancery the objection must be specified as a cause of demurrer under rule 209 of the court, and it cannot be availed of under a general demurrer for want of equity.

2. Where the case made by the bill, that is. where all the facts, taken together, make a case in which it is doubtful if the complainant be entitled to relief, the bill may be assailed for want of equity under a general demurrer, but where the want of equity springs out of some cause which can be distinctly stated in the demurrer in an intelligible proposition, whether it be collateral to the bill, strictly speaking, or whether involved in the main case, then the cause of demurrer must be specified.

3. Where the corporate stock to which a contract of sale relates is not procurable in the market and its pecuniary value is not readily ascertainable, specific performance will, as a rule, be decreed.

4. Upon a sale of goods or lands and payment by the vendee of the consideration, the vendor holds the legal title to the property in trust for the vendee, and will be required to specifically perform the contract by making a proper conveyance.

5. It will not be presumed that the shares of stock in what is known as a close corporation can either be procured in the market or that they have any market value; and whenever their procurement and their value comes in question, proof of these facts will be required.

6. Where the complainant has performed all of the conditions of the contract on his part to be performed, so far as permitted to do by the defendant, the defendant will be required to specifically perform his part of the contract.

7. Where the vendee of real or personal property makes such performance of the contract on his part as satisfies the law, and the other party refuses to perform, a bill for specific performance will lie; and more especially so in a case where not only has the complainant performed, but the defendant himself has made part performance

On bill and demurrer.

*Mr. Gilbert Collins,* for the complainant.

*Mr. Charles D. Thompson,* for the defendant and demurrant.

WALKER, V. C.

The bill in this case alleges that the Standard Car Truck Company, a corporation existing under and by virtue of the laws of the State of New Jersey, was organized with a total amount of capital stock of the par value of $150,000, the shares being $100 each; that the defendant, who was one of the organizers of the company and its principal stockholder, received one thousand four hundred and ninety out of the total issue of one thousand five hundred shares, and, upon the incorporation of the company, became, and has continued to be, one of its directors and its president; that the defendant, Mr. Barber, persuaded the complainant, Mr. Safford, because of the latter's extensive acquaintance with railroad organizations throughout the country, to enter into the employment of the Standard Car Truck Company for a period of three years, the complainant to be paid his necessary expenses and the sum of $7 for each truck he should succeed in getting various railroad companies to put upon its cars, and, in addition, the defendant was to give to the complainant $25,000 worth, par value, that is, two hundred and fifty shares, of the full-paid capital stock of the company, and to have the complainant elected a director therein, to all of which the defendant agreed, and the company thereinafter, upon the request of the defendant, 'ratified the employment of the complainant and provided for his compensation as above stated,'and he was elected one of the company's directors; that for upwards of two years the complainant continued successfully in the active discharge of his duties under the terms of his em-

ployment with the company, and while so in the employ of the company and while he was performing his services, and without his consent or without legal justification, the company discharged him from its employment, notwithstanding his protests and his insistment that he should be allowed to continue his duties during the remainder of the term of his employment under the contract; that while the complainant was employed by the company, and at different times, the defendant delivered to him in all thirty-five shares of the company's capital stock and no more; that the business of the company is now (1901, when the bill was filed) valuable and the stock sells for almost par; that the defendant has failed and neglected to carry out his part of the agreement with the complainant, namely, to deliver him the balance of the stock of the company, although often requested so to do; that the defendant still has and possesses sufficient of the capital stock of the company, full paid, to carry out his contract with the complainant; that the defendant brought about and influenced the discharge of the complainant from the company which he, the defendant, controls; that the defendant claims and pretends that because the complainant did not perform the services for the company for the entire period of hiring (three years), that he, the defendant, is exonerated and relieved from delivering any further stock to the complainant.

The defendant was served personally with subpoena in this state on January 2d, 1901, and the cause slept until October 21st, 1907, when the complainant took an order on him to plead, answer or demur within thirty days after service upon his solicitor of a copy of the order. On November 4th, 1907, the defendant applied for and obtained an order for security for costs, the complainant being a non-resident of New Jersey, and, security being given, the defendant, on December 2d, 1907, filed a general demurrer to the bill.

Counsel for the defendant asserts that the demurrer to the bill raises the question of want of equity, and that the want of equity is, that the complainant has an adequate remedy at law. This was the only proposition discussed upon the hearing.

Rule 209 of this court requires that every demurrer, whether general or special, shall distinctly specify the ground or several

grounds of demurrer. It has been held, however, that notwithstanding the rule just mentioned, that a simple statement of want of equity, in the usual language of a general demurrer, will constitute a sufficient specification of the ground of the demurrer in cases where the court finds, on looking at the complainant's bill, that his right to relief is doubtful or uncertain, but where the defect is obscure or latent to such an extent that the court, on inspecting the complainant's bill, cannot readily discern it, there the demurrant will be required to make a more explicit statement of the ground on which his demurrer is founded. *Essex Paper Co.* v. *Greacen,* 45 *N. J. Eq. (18 Stew.)* 504; *Parker* v. *Stevens,* 61 *N. J. Eq. (16 Dick.)* 168; *Goldengay* v. *Smith,* 62 *N. J. Eq. (17 Dick.)* 354; *Demarest* v. *Terhune,* 62 *N. J. Eq. (17 Dick.)* 663; *Larter* v. *Canfield,* 59 *N. J. Eq. (14 Dick.)* 461, 464.

However, under the same rule (209, formerly 225), the grounds of demurrer must be specified even where the defect in the bill is plain, if that defect be collateral to the main issue. *Van Houghten* v. *Van Winkle,* 46 *N. J. Eq. (1 Dick.)* 380. In this case (*Van Houghten* v. *Van Winkle*) the defendant under a general demurrer relied upon laches as a cause appearing upon the face of the bill which showed a lack of equity. Chancellor McGill remarked (at *p. 386*) : "I will not say that the laches exhibited by this bill is not readily discernible, but I am most decidedly of the opinion that within the letter and spirit of the rule, it was the duty of the demurrant to indicate that it was because of laches that he demurred. Not only should specification be made where the defect in the bill is obscure, but also even where it is plain, if it is collateral to the main case made by the bill, as it is in this instance." As no objection was made to the form of the demurrer it was sustained.

It is at least doubtful, to my mind, whether the question of adequate remedy at law is not collateral to the main case, the same as laches was held to be in *Van Houghten* v. *Van Winkle, ubi supra;* but, be this as it may, it seems that legal remedy when relied upon for cause of demurrer in a chancery suit must be specified as a cause of demurrer. *Bishop* v. *Waldron,* 56 *N. J. Eq. (11 Dick.)* 484; *S. C.,* on appeal, 58 *N. J. Eq. (13 Dick.)*

*583.* In this case (*Bishop* v. *Waldron*), it is stated by Chancellor McGill (at *p. 487*) that the statute under which the complainant's bill was filed did not require any allegation to the effect that it was not in the complainant's power to put to rest the claim of the defendant with reference to the complainant's lands by one of the ordinary processes of the law, nevertheless, it was squarely decided (at *p. 486*) that the ground relied upon by the demurrant that the bill did not allege that the complainant cannot attack the claim of the defendants by suits at law, that is, that the complainant has no adequate legal remedy, was objectionable under the rule which requires that the particular grounds upon which it rests shall be specified as construed in *Essex Paper Co.* v. *Greacen* and *Van Houghten* v. *Van Winkle, ubi supra.* Chancellor McGill, in this connection, remarked: "The grounds taken at the argument could have been distinctly stated in the demurrer in intelligible propositions." If this is the test, then the rule would seem to be this: Where the case made by the bill, that is, where all the facts taken together, make a case in which it is doubtful if the complainant be entitled to relief, the bill may be assailed for want of equity under a general demurrer, but where the want of equity springs out of some concrete proposition, whether collateral to this bill, strictly speaking, or whether involved in the main case, then the cause of demurrer must be specified.

While I hold that the demurrer in this case is bad for want of specification of the cause upon which the alleged lack of equity is rested, nevertheless, as the question of the sufficiency of the bill was fully argued upon the demurrer, I will decide that question also.

Counsel for the defendant urges specific performance of a contract for the purchase or sale of stock will not be decreed where the stock is purchasable on the market or has a money value which may be readily computed, and cites *26 Am. & Eng. Encycl. L.* (*2d ed.*) *122.*

This is undoubtedly a correct exposition of the law; but the stock of a commercial or industrial corporation, which is usually a close corporation, so called, that is, one owned and controlled by a coterie of individuals, is usually not for sale, and has no

market value. The bill is this case alleges that the defendant organized and controls the corporation whose stock the complainant seeks. It is a close corporation.

I think the complainant's case falls more nearly within that other rule stated in *26 Am. & Eng. Encycl. L. (2d ed.) 122,* namely, that where the corporate stock to which the contract relates is not procurable in the market, and its pecuniary value is not readily ascertainable, specific performance will, as a rule, be decreed, especially where the court acquires jurisdiction of the action on the ground that there is an action to enforce a trust.

In *Adderley* v. *Dixon; 1 Sim. & S. 608, 610,* Vice-Chancellor Sir John Leach said: "A court of equity will not generally decree performance of a contract for the sale of stock or goods, not because of their personal nature, but because damages at law, calculated upon the market price of the stock or goods, are as complete a remedy to the purchaser as the delivery of the stock or goods contracted for, inasmuch as, with the damages, he may purchase the same quantity of the like stock or goods."

In *Duncuft* v. *Albrecht, 12 Sim. 190,* Vice-Chancellor Shadwell made a distinction between public stocks of a known market value, and stocks of a particular company with none in the market, remarking (at *p. 199*) : "Now, I agree that it has been long since decided that you cannot have a bill for the specific performance of an agreement to transfer a certain quantity of stock. But, in my opinion, there is not any sort of analogy between a quantity of three per cents. or any other stock of that description (which is always to be had by any person who chooses to apply for it in the market), and a certain number of railway shares of a particular description, which railway shares are limited in number, and which, as has been observed, are not always to be had in the market. And, as no decision has been produced to the contrary, my opinion is that they are a subject with respect to which an agreement may be made which this court will enforce." This distinction was recognized and approved by Lord-Chancellor Chelmsford in *Cheale* v. *Kenward, 3 De G. & J. 27.* He remarked (at *p. 29*) : "Now, there is no doubt that a bill will lie for a specific performance of a contract to transfer railway shares."

In *Rothholz* v. *Schwartz, 46 N. J. Eq. (1 Dick.) 477,* it was held that the court of chancery would entertain jurisdiction of a suit by a vendor against the vendee for the specific performance of a contract for the sale of chattels where the payment was to be made by specific securities and the remedy at law is inadequate. In that case Vice-Chancellor Pitney remarked (at *p. 481*) : "The cases cited by Chancellor Runyon in *Cutting* v. *Dana* and Professor Pomeroy and Judge Waterman, are mostly, if not all, cases of vendee against vendor, and the language used in the text of the treatises is mainly applicable to such cases. But the principle upon which they go includes the cases of vendor against vendee." In *Rothholz* v. *Schwartz* the vendor put the vendee in possession and relied upon his promise to execute the securities. With regard to the vendor in that case regaining possession, by replevin, of the goods which he delivered, which the vice-chancellor thought was more than doubtful, he remarked that it seemed to him that a reclamation of possession by means of replevin would be treated at law as a rescission of the contract and must be preceded by a repayment or tender of return of the part payment and an abandonment of all benefit from the contract. In the case at bar there could be no rescission of the contract by the complainant, for the consideration given by him for the stock in question, together with that which has been delivered, was his work and labor performed for the company for a period of upwards of two years. Therefore, in this case, there could be no rescission by the complainant for the fraud of the defendant in withholding from him the delivery of the balance of shares to which the complainant is entitled under the contract. The observation of Vice-Chancellor Pitney in *Rothholz* v. *Schwartz,* that it did not lie in the defendant's mouth to complain that the complainant had brought him into this court to administer his right under its protection and direction, is peculiarly applicable to the facts of the case at bar.

In *Curtice Brothers' Co.* v. *Catts, 72 N. J. Eq. (2 Buch.) 831,* Vice-Chancellor Leaming held that no inherent difference between real estate and personal property controls the exercise of the jurisdiction of chancery to decree specific performance of a contract, and that where no adequate remedy at law exists specific

performance of a contract touching the sale of personal property will be decreed with the same freedom as in the case of a contract for the sale of land.

A vendor may bring a suit for specific performance against the vendee to recover purchase-money. *Moore* v. *Baker, 62 N. J. Eq. (17 Dick.) 208.*

In *Goodwin Gas Stove, &c., Co.'s Appeal, 117 Pa. St. 514,* the supreme court of Pennsylvania affirmed a judgment of the Philadelphia common pleas sustaining a master's report. The master's language is stated as follows (at *p. 528*) : "The stock is not listed in the stock exchange of this city (Philadelphia) or elsewhere. It cannot be brought in the market. It has no market price. So far as the master is informed there have been no open sales, all transfers having presumably been *inter parties.* It would seem to be difficult, if not impossible, to measure in money the value of such stock. Based upon its earning power, an estimate could be made of its value, and that sum of money fixed as the damages. The remedy, then, would not be complete. The damages must first be made out of some one whose ability to pay is not in evidence, and moreover, when the money damages are paid, stock in the same company cannot be procured. Other stock may possibly be purchased, while its earning powers may now be equal to those of the stock in question, *non constat,* that they will continue to be equal, or that the circumstances and conditions of the two corporations are not so widely different that the real estate of the stocks as investment securities, albeit to-day paying the same dividends, may not be very far apart."

In *Ashe* v. *Johnson's Administrator, 2 N. C. 149, 155,* the court remarked: "Again it is said equity will not enforce the specific performance of an agreement to transfer or to accept stock. The reply is, that may be so with reference to government stock in England, which, like corn or flour, may be bought for the money in market at any time, but the doctrine has no application to railroad stock." This was in the year 1855, when railroad stocks generally were not as valuable as now, and consequently were not generally regarded as good investment securities, and, while the question was not definitely decided in

that case, the observation of the court, in my judgment, correctly states what is now the law.

In his conclusions in *Murray* v. *Skirm* (*Court of Chancery, 1905*), which is unreported, Vice-Chancellor Bergen, speaking of certain shares of stock of a manufacturing corporation, said: "It was the stock of an industrial company, and its market value was an uncertain quantity." This case was recently decided on appeal by the court of errors and appeals, and the decree of the vice-chancellor affirmed. Speaking for the majority of the court of errors and appeals in that case, Mr. Justice Garrison in his opinion said: "If, in the absence of fraud, it be admitted that that question of the value of the stock is at all relevant to the present controversy, it must also be admitted that, strictly speaking, the market value of the stock was not proved, * * * the vice-chancellor properly declined to take par value as the equivalent of market value, and he also rightly recognized that the price paid for stock to get a controlling interest was not a reliable criterion of the market value of the outstanding minority shares."

In *Raynolds* v. *Diamond Mills Paper Co.*, *69 N. J. Eq.* (*3 Robb.*) *299*, Vice-Chancellor Stevenson, speaking of the value of shares of corporation stock, said (at *p. 309*): "But, in fact, in this case the complainant's stock is that of a private manufacturing corporation, a close corporation, whose stock does not appear to have any market value. * * * I think the distinction drawn by counsel for complainant between private manufacturing corporations like this paper mill company and banks and trust companies, and even railroad companies, the shares of which are readily salable at all times on the market, and the market price of which is directly affected by the prosperity of the corporation, ought not to be overlooked," &c.

In *Baldwin* v. *Commonwealth*, *11 Bush 417*, a sale of turnpike stock, belonging to the State of Kentucky, was by legislative act ordered to be sold by the commissioners of the sinking fund, and it was there held that a bid made for such stock which was accepted, should be specifically enforced and the commissioners were ordered to execute the contract of sale and transfer the stock. It so happened that after the sale was

made the legislature repealed the act under which it was ordered, hence the commissioners refused to make the transfer. It may be said that specific performance was enforced in that case because the complainant had no remedy at law, and that may be true, yet, it seems to me, the case is authority for the position that a sale will be specifically enforced where there are any special or peculiar circumstances which indicate that the complainant in equity is entitled to the thing he seeks rather than damages resulting upon the deprivation of it.

If the stock in question in this suit has no market value for which adequate damages could be given at law, then this court undoubtedly has jurisdiction to specifically enforce the contract between these parties.

Now, I would have no difficulty in holding that complainant in this case is entitled to a decree for specific performance upon the admitted facts, were it not for the allegation in the bill that the stock of the company is now (1901) valuable and sells for almost par. It may be urged that this is an allegation that the stock is practically worth par and that it is salable. On the other hand, it may be urged that this is not an allegation that the stock is worth par, but that it is worth something less than par, and it is not salable on any market, and that, consequently, this is a case for specific performance rather than one for remitting the complainant to his action at law for damages. These questions I will not attempt to decide. They make it at least doubtful whether or not the complainant has an adequate remedy at law, and this compels me to regard another question urged by counsel for the complainant, and that is that the bill in this case presents a case of fraud and of trust *mala fide.*

The contract, it will be remembered, was that the complainant should enter into employment of the Standard Car Truck Company for a period of three years, which he says he did, and that he served faithfully for over two years, and until discharged by the company without cause and at the instigation of the defendant. For that consideration, namely, his services rendered, he was to have two hundred and fifty shares of the company's stock, of which the defendant delivered to him only thirty-five shares. He alleges that he is entitled to have the balance of two hun-

dred and fifteen shares delivered to him by the company or to have its equivalent in money, amounting, at par, to $21,500. This, in effect, is what is pleaded, although the language used is different. As a matter of fact, the bill says the complainant is entitled to the balance of two thousand four hundred and sixty-five shares, or its equivalent in money, amounting to $246,500. This, of course, is a palpable error.

I incline to the opinion that this is a case of fraud and of trust *mala fide.* The complainant performed the contract on his part, that is, he paid for the stock by his services, and therefore became its owner by the law of this state. Delivery is not necessary to complete the sale of personal property. *Frazier* v. *Fredericks, 24 N. J. Law (4 Zab.) 162, 169.* In this transaction, I take it, title passed to the complainant.

It seems that the court of chancery in this state have jurisdiction in cases of fraud equally with courts of law even where there is a remedy at law. *Eggers* v. *Anderson, 63 N. J. Eq. (18 Dick.) 264.*

There is a constructive trust in this case. Mr. Perry says that constructive trusts are: "Third, trusts that arise from some equitable principle independent of the existence of any fraud; as where an estate has been purchased, and the consideration money paid, but the deed is not taken, equity will raise a trust by construction for the purchaser." *1 Perry Trusts 168.* The supreme court of Tennessee, in *Matthews* v. *Crowder, 111 Tenn. 738, 743* (citing *Perry 168*), said: "Equity in such a case will regard the vendor as the trustee of the legal title of the land for the benefit of the vendee." In my opinion, the defendant in this case holds the legal title to the shares of stock in question for the benefit of the complainant, and, therefore, specific performance is a remedy available to the complainant, irrespective of the question of the adequate of damages at law, and, too, irrespective of the question of fraud.

There is also another reason for decreeing a specific performance. It is that the complainant has performed all the conditions on his part to be performed, so far as he was permitted to do so by the defendant, and he is, for that reason, entitled to

have performance from the defendant. *Fry Spec. Perf. (2d ed.)* *904* § *et seq.*

In my judgment, where the vendee of real or personal property makes such performance of his part of the contract as satisfies the law, and the other party refuses to perform, a bill for specific performance will lie; and this is even more true in such a case as this, where not only has the complainant performed, but the defendant himself has made part performance.

In arriving at these conclusions, I have not overlooked *Joslin* v. *Stokes, 38 N. J. Eq. (11 Stew.) 31*, cited by counsel for the demurrant. Chancellor Runyon, in denying specific performance in that case, remarked that the complainant's remedy was at law, "except, perhaps, as to the issuing of the stock." In that case (*Joslin* v. *Stokes*) the complainant's contract was with the defendants, and by its terms he was to acquire stock from a corporation, and the corporation was not bound. Other facts in that case differ from those in this case, and, therefore, in my judgment, *Joslin* v. *Stokes* is without controlling effect in the case at bar.

For the foregoing reasons the demurrer will be overruled, with costs.

# CASES

ADJUDGED IN

# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

### FEBRUARY TERM, 1908.