PHILADELPHIA HOME FOR INCURABLES et al., appellants,

*v.*

PHILADELPHIA SAVING FUND SOCIETY, respondent.

[Argued October 22d, 1940. Decided April 3d, 1941.]

*Mr. George Purnell* (*Mr. Ralph N. Kellam, Mr. Byron M. Seabrook, Mr. Alfred T. Glenn,* and *Mr. Maurice Y. Cole,* of the New Jersey bar, and *Mr. R. W. Archbold, Jr., Mr. Joseph C. Henry, Mr. Robert V. Massey, Jr., Mr. Jesse S. Shepard,* and *Mr. Bertram I. DeYoung,* of the Philadelphia bar, on the brief), for the appellants. .

*Mr. John Lloyd, Jr.* (*Mr. Charles J. Biddle* and *Mr. Lewis H. Van Dusen, Jr.,* of the Philadelphia bar, on the brief), for the respondent.

The opinion of the court was delivered by

PARKER, J.

The respondent Philadelphia Saving Fund Society in 1911 loaned to George K. Breintnall, now deceased, the sum of $250,000 on his bond secured by a mortgage covering a large business building in Philadelphia at the corner of Thirteenth and Arch streets, known as the "telephone building." The mortgage was never paid or foreclosed: Breintnall died testate in 1927, having been for many years a resident of Atlantic City in this state. His will was proved in Atlantic county, and the Orphans Court of that county has continuously exercised jurisdiction over the settlement of his estate. The usual order to limit creditors was made on September 14th, 1927; respondent did not file a proof of claim, and in due course a "decree barring creditors" was entered. In 1928 and early in 1929 the executors sold two Philadelphia properties at prices yielding a substantial value over the encumbrances. Later, in 1929, came the financial debacle. The estate then had on its hands, among other assets, the "telephone building" which the executors in 1934-1935 offered to the respondent in satisfaction of the mortgage debt, which offer was refused, and thereafter the executors sold the property at public sale, subject to the mortgage, for $150, and respondent as mortgagee entered into possession, demanded payment of the amount due on the bond, and filed proof of claim accordingly. There being a surplus of assets over filed claims, a creditor who had not filed claim before the order barring creditors was entitled to resort to that surplus. The various remedies are set out in the opinion below at *page 109* of *126 N. J. Eq.* Respondents filed a claim, which was disputed, and held invalid on technical grounds without prejudice to filing a new claim. See *Philadelphia Saving Fund Society* v. *Disston, 16 N. J. Mis. R. 129; 198 Atl. Rep. 212.* Such new claim being presented, the bill in this cause was filed by the residuary legatees, the general object being to bar enforcement of the belated claim as against the surplus assets remaining after order barring creditors. The Court of Chancery denied the relief prayed, referred to a master the ascer-

tainment of the amount due respondent, and on the coming in of his report decreed payment of the claim, with directions as to certain details touching time and manner of payment, not now drawn in question, apart from the main proposition that the claim should not be allowed at all.

After full consideration of the matter, we are entirely satisfied that the decree under review should be affirmed, and in the main for the reasons given in the full and satisfactory opinion of the court below.

Five main points are made on the appeal. Four of them are identical with those stated in the opinion below, at *page 106,* though presented here in a different order. The fifth is that "the decree appealed from exceeds the jurisdiction of the Court of Chancery;" and may as well be disposed of at this point.

It should be noted that there is no claim that the Court of Chancery had no jurisdiction to entertain the suit, and naturally not, as the appeal is by the original complainants asking equitable relief, and by certain defendants claiming adversely to respondent. The claim here is that "the *decree appealed from* exceeds the jurisdiction of the Court of Chancery." (Italics ours.) This claim may be shortly, and as we think completely, answered by quoting the language of the late Mr. Justice Depue speaking for this court in *Coddington* v. *Bispham, 36 N. J. Eq. 574* (at *p. 578),* citing numerous authorities: "Whenever a bill is filed in equity against executors, either by a creditor or by residuary or other legatees, touching the administration of the estate, the suit is for the benefit of all parties interested, and the court may assume the general administration of the estate." And in line with that principle, by a lengthy stipulation in writing, entered into apparently by all parties, it was "admitted that to avoid multiplicity of actions and to avoid circuity of" action, this court should take jurisdiction of the entire controversy between the parties in this cause, and should make such decree therein as "should be equitable and just."

Turning to the other four points, which, as noted, were made below, the first one discussed by the Vice-Chancellor is Point III on this appeal, viz., "the claimant is barred from

asserting its claim against the estate by the application of the Doctrine of Equitable estoppel." As to this, we are satisfied with the treatment of the point by the learned Vice-Chancellor, and adopt his reasoning and conclusion in that regard.

The second point considered below, invoking the doctrine of marshaling of assets, is argued as the fourth here. We think that the treatment of this point in the court below is adequate and correct, and that further discussion of it here is needless.

The third and fourth points discussed in the Court of Chancery correspond with the first and second points argued here, and rest on the law of Pennsylvania as proposed in the brief for the appellants. They are (a) that "under the law of Pennsylvania the will does not work an equitable conversion of land into personalty," and (b) that "claimant is barred from claiming the proceeds of sale of Pennsylvania real estate by failure to preserve its lien in the manner required by the Pennsylvania statute."

As to the matter of equitable conversion, the point is based on the assumption that because certain other land sold by the executors and turned into money was situate in Pennsylvania, the question of conversion *vel non* is to be determined by *lex loci rei sitæ*. The Vice-Chancellor, in view of the language of the will, held otherwise, and we agree with him. But in any event, as he points out, there was an actual sale of those other lands and conversion into money, and this for the natural and necessary purpose of paying debts and legacies; so that, to adopt his language, "the proceeds in the hands of the executors after the sale of the real estate became personalty and are liable for the payment of decedent's debts." We agree also that the Fiduciaries act of Pennsylvania is inapplicable to these proceeds, now personalty, in the hands of the executor of a deceased resident of this state, administering the estate under the supervision and control of our courts.

The respondent did not first foreclose its mortgage, and was not required to do so, as the land was in Pennsylvania and it is not suggested that the state has any such statute

as our present *R. S. 2:65-2 et seq.*, previously *Comp. Stat. 1910 p. 3421.* Respondent has been in possession as mortgagee, but under the decree herein must surrender that possession on payment of the amount found due by the master, with certain minor adjustments.

We conclude that the decree under review should be affirmed, with costs.

In the interest of clarity it may be well to point out an apparent misprint in the opinion below, at *page 106* of *126 N. J. Eq.* It speaks of argument "under four heads," and states three by number: but the language "for under the law," &c., should read "(4) under the law," &c., and so reads in the printed case before us.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 12.

*For reversal*—None.