28 N.J. Super. 1 (1953)
99 A.2d 829
ALFRED E. DRISCOLL, GOVERNOR OF THE STATE OF NEW JERSEY AND THEODORE D. PARSONS, ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, INFORMANTS AND PLAINTIFFS-RESPONDENTS,
v.
BURLINGTON-BRISTOL BRIDGE COMPANY, A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS-RESPONDENTS. MILTON M. UNGER AND ADRIAN M. UNGER, PARTNERS TRADING AS MILTON M. AND ADRIAN M. UNGER, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1953.
Decided October 23, 1953.
*3 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Milton M. Unger argued the cause for appellants (Messrs. Milton M. and Adrian M. Unger, attorneys).
Mr. Paul N. Belmont argued the cause for receivers (Messrs. Van Riper & Belmont, attorneys).
Mr. Robert L. Hood argued the cause for Burlington County Bridge Commission.
The opinion of the court was delivered by CLAPP, S.J.A.D.
This is an appeal by Milton M. and Adrian M. Unger, counsellors, seeking to sustain an assignment made to them in their own right.
In Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952), appellants represented 12 defendants there designated as the selling syndicate. The syndicate and Fitzgerald & Co. Inc. (over which the court has not acquired jurisdiction) sold their stock in the Burlington-Bristol Bridge Company to the Burlington County Bridge Commission at a gross profit of $3,050,347. At the time of the sale they deposited $119,900 with the Chemical Bank & Trust Company as "escrow agent" to pay certain taxes and other claims which  except for taxes of perhaps $13,321.10  never eventuated. The residue of the deposit was to go to themselves. $100,000 of this $119,900 was held to be a part of the profits of the sale (8 N.J., at p. 466). The remaining $19,900 we speak of later.
Some months after the remand of the case by the Supreme Court, certain members of this syndicate assigned to appellants their interest in the $119,900, namely, 54 1/4% or $65,045.75, in return for services and disbursements of appellants. The order appealed from held, in effect, that the assignment was nugatory.
*4 The first question here is whether as a result of the fraud infecting the transaction, as related in the opinion cited, the syndicate at the time of the assignment held their interest in the $100,000 upon a constructive trust for the Bridge Commission. If so, the assignment to the appellants did not cut off the Bridge Commission's rights for the appellants, as the syndicate's attorneys throughout the litigation, are to be charged with notice of those rights.
The Supreme Court's opinion (8 N.J., at p. 501), and the judgment on the remand of the case, both made this direction:
"To the extent that the members of the selling syndicate * * * have an interest therein, the entire transaction in all its ramifications is rescinded and they shall repay to the bridge commission the sum of $3,050,347."
the gross profit mentioned. Earlier in the opinion (8 N.J., at p. 500), the Supreme Court had said:
"The members of the selling syndicate must make restitution of that which they have received, for otherwise they will be unjustly enriched by their fraud at the expense of the public."
Although the Supreme Court did not direct a rescission of the whole transaction, it did so, most emphatically, as to the syndicate's interest therein, and hence as to the profits of $3,050,347 (including the $100,000) paid by the Commission to the syndicate on the sale. A rescission of a transaction is the undoing of it; it returns the parties (with exceptions not now relevant) to the very ground upon which they originally stood. N.Y. Life Insurance Co. v. Weiss, 133 N.J. Eq. 375, 379 (E. & A. 1943); Green v. Stone, 54 N.J. Eq. 387, 396 (E. & A. 1896). So on the rescission or disaffirmance of a simple sale or exchange of chattels because of fraud, the title to each chattel is restored to its former owner. 5 Williston on Contracts (Rev. Ed.), Sec. 1370; cf. Williamson v. N.J. Southern R.R. Co., 29 N.J. Eq. 311, 319 (E. & A. 1878). However, we deal here with another matter. The syndicate took $100,000 out of the purchase price and included it in the escrow deposit. Our *5 concern therefore is not with the price (or a chattel given in lieu of it), but with the proceeds of a portion of the price.
We are brought by these circumstances to the law of constructive trusts and called upon to explore a fundamental matter. Is such a trust to be raised upon the proceeds of a fraudulent transaction found in the hands of the wrongdoer, even though there is no fiduciary or confidential relationship involved and the remedy at law is adequate? The adequacy of that remedy is demonstrated here by the fact that the proceeds we deal with consist of a fund of money, and there is no suggestion that any wrongdoer is insolvent. The question asked is answered affirmatively by the authorities in this State in a variety of situations (we cite the cases in the order of their interest to us here). General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305 (Ch. 1932); Hochman v. Zigler's, Inc., 139 N.J. Eq. 139, 143 (Ch. 1946); Safford v. Barber, 74 N.J. Eq. 352, 361, 362 (Ch. 1908), relying on the unusually broad jurisdiction invested in equity in this state in cases of fraud (Eggers v. Anderson, 63 N.J. Eq. 264 (E. & A. 1901)); Allen v. Allen, 88 N.J. Eq. 575 (E. & A. 1917); Green v. Levitsky, 120 N.J. Eq. 364 (Ch. 1936); Brooks v. Metropolitan Life Ins. Co., 70 N.J.L. 36, 39 (Sup. Ct. 1903); Neiman v. Hurff, 11 N.J. 55 (1952), dealing in part with corporate stock; Whitney v. Lott, 134 N.J. Eq. 586 (Ch. 1944); see Williams v. Young, 81 A. 1118 (Ch. 1910), affirmed 78 N.J. Eq. 293 (E. & A. 1910).
It must be said that there is not much discussion of the matter in these cases. However, the Restatement of Restitution, Professor Scott and Dean Ames are in accord. Restatement of Restitution, sec. 160 (particularly e and k), sec. 202 (particularly g and n, and illustrations 5, 8 and 9), cf. sec. 203; Scott on Trusts, sec. 462.3, 508-508.2, 509; Ames, Following Misappropriated Property into its Product, 19 Harv. L. Rev. 511, 513 (1906). See interesting note, 25 St. John's Law Review 283 (1951).
The adequacy of the remedy at law may seem to present the difficulty here. However, under the doctrine *6 expounded both by the Restatement and Scott, this will be found not to be so. According to that doctrine, where there is unjust enrichment entitling a party to restitution, a constructive trust is imposed in his favor, giving to him "the beneficial interest in the property; and a holding that where the legal remedy is adequate he cannot have specific restitution, is merely procedural." Restatement of Restitution, sec. 163 (d), dealing with mistake. See in general, Id., sec. 4 d, 160, particularly e, and Scott on Trusts, sec. 462.3 and 462.4; Strout v. Burgess, 144 Me. 263, 68 A.2d 241, 256 (Sup. Ct. 1949). This is as it should be. Where a party is entitled to restitution of a res, it is only just that he be given the beneficial ownership. The doctrine is dispositive of the problem here, for the Chemical Bank does not object to the order below, and we are therefore not concerned with the matter of specific restitution.
Under the doctrine stated and the New Jersey cases, there arose at the time of the fraud or at any event (the transaction having been rescinded) as of that time, a constructive trust, and thereupon a beneficial interest became vested in the Bridge Commission. That being so, the assignment to the appellants will, as above stated, fall, for appellants are to be charged with notice of that interest.
The fact that the Supreme Court and the judgment on the remand required the syndicate "to account for" and "repay to the bridge commission" the $3,050,347 (including the $100,000) and thus created a right in personam for that sum, is not repugnant to the raising of a property right in the Bridge Commission in the $100,000 fund. The in personam rights thereto were not declared to be the Bridge Commission's sole rights.
Nor can appellants make anything of the fact that neither the Supreme Court's opinion nor the judgment on the remand refer to the $119,900, even though the Chancery Division's original judgment of December 29, 1950 had ordered it to be paid to the bondholders. The balance in the escrow deposit was not to be paid to the syndicate until November 1, 1952, and before then, certain other claims *7 against the deposit had to be settled. It would seem to have been premature for the Supreme Court in its opinion of January 21, 1952 to have then ordered this balance paid over.
Nor is anything to be made of the fact that the matter of a constructive trust was not expressly dealt with below, nor considered on the appeal except when presented by the court on the argument. We are concerned only with the soundness of the order appealed from. Cf. B. Krevolin & Co. Inc., v. Brown, 20 N.J. Super. 85 (App. Div. 1952).
We come now to the $19,900 above mentioned. By an agreement made the day the syndicate sold their Bridge Company stock to the Bridge Commission, they agreed with the Commission that they "will" accept from the Bridge Company the $19,900 and include it in the escrow deposit. Thus, after the sale or perhaps at the time of it, the $19,900 was withdrawn from the Bridge Company. Under these circumstances it might be said that the stockholders received as consideration for the sale of the stock, not only the profits of $3,050,347 above mentioned, but also a residual interest in the $19,900. However that may be, the Supreme Court by its mandate ordered the Superior Court to take proceedings "consistent with the opinion" of the Supreme Court; by that opinion it fixed the profits at $3,050,347 and thereby determined, in effect, that the $19,900 was not a part of those profits. The Superior Court, being bound by that mandate (Tuttle v. Gilmore, 42 N.J. Eq. 369 (E. & A. 1886); Lincoln Materials Co. v. John R. Blair Co., 109 N.J. Eq. 159 (E. & A. 1931)), cannot consistently therewith find otherwise. The $19,900, therefore, cannot be reached as the proceeds of part of the sellers' profits realized on this fraudulent sale.
Next we come to a matter of marshaling assets. There is concededly a claim for income taxes first payable from the $119,900 which, it is suggested, may be settled for $13,321.10. Thus there is, first, a paramount tax claim on both portions of the escrow deposit, the $100,000 item and the $19,900 item; next, a claim second in rank, acquired by the Bridge *8 Commission on the theory of a constructive trust, but limited solely to the first item ($100,000 less 4 1/4%, viz., Fitzgerald's interest); and lastly a claim, third in rank, due appellants under their assignment affecting 54 1/4% of both items.
Under elementary principles, these claims will be so marshaled that the taxes will be paid first from the $19,900, and then from the $100,000. Sternberger v. Sussman, 69 N.J. Eq. 199 (Ch. 1905), affirmed 85 N.J. Eq. 593 (E. & A. 1915); Phila. Home, etc. v. Phila. Saving Fund Society, 126 N.J. Eq. 104 (Ch. 1939), affirmed 129 N.J. Eq. 243 (E. & A. 1940); Sussex County Mut. Insurance Co. v. Woodruff, 26 N.J.L. 541 (E. & A. 1857). Such portion as remains of the $100,000, less Fitzgerald's 4 1/4%, will be applied as a credit on the judgment against the syndicate, prorating the same proportionately among the syndicate in accordance with their respective holdings of Bridge Company stock at the time of the sale. Such portion, if any, as remains of the $19,900 will go 54 1/4% to appellants under their assignment. The balance of the $19,900, less Fitzgerald's 4 1/4%, will also be applied as a credit on that judgment, prorating the same among the members of the syndicate other than the assignors, in proportion to their holdings of said stock.
As directed by the court below, the $119,900, less Fitzgerald's share of $5,025.75, will be paid by the Chemical Bank to the receivers designated (8 N.J., p. 502) to collect the $3,050,347, and they can make the applications above stated. The $5,025.75 will remain with the bank because of a possible claim on Fitzgerald's part. The bank will pay 4 1/4% of the taxes from the $5,025.75, and the receivers are to pay the balance of the taxes from the amount so paid to them.
One more point must be examined. The appellants claim an attorney's lien on the $119,900 upon the theory that the Supreme Court decision was in favor of their clients, to the extent of the $119,900. Visconti v. M.E.M. Machinery Corp., 7 N.J. Super. 271 (App. Div. 1950); Norrell v. Chasan, 125 N.J. Eq. 230 (E. & A. 1938). Indeed the *9 decision was not in favor of them in any respect. Besides an attorney's lien on this fund is taken subject to the claim for income taxes and also to the prior equities of the Bridge Commission under the constructive trust, of which equities appellants are, as above stated, chargeable with notice. Columbia Insurance Co. v. Artale, 112 N.J. Eq. 505 (Ch. 1933), affirmed 114 N.J. Eq. 268 (E. & A. 1933); Norrell v. Chasan, supra, holding the attorney a mere equitable assignee. The point is without any merit.
Judgment modified.