**KARON BUSINESS FORMS, INC., Plaintiff,**

v.

**SKANDIA INSURANCE CO., LTD., Defendant.**

Civ. No. 78–2.

United States District Court, D. Puerto Rico.

Dec. 7, 1978.

Feldstein, Gelpí, Toro & Hernández, San Juan, P. R., for plaintiff.

Fernando Pérez Colón, Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas, San Juan, P. R., for defendant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

Plaintiff Karon Business Forms, Inc. ("Karon"), is claiming from defendant Skandia Insurance Company, Ltd. ("Skandia"), $94,864.05 in damages suffered by plaintiff in a fire at plaintiff's premises on May 12, 1977. Karon was insured with the Commonwealth Insurance Company ("Commonwealth"), presently in the midst of liquidation proceedings under Title 26, Laws of Puerto Rico Annotated, Sections 4001 *et seq.*, under a policy issued by Commonwealth on August 1, 1976. The policy was endorsed by Skandia on September 8, 1976. (See Exh. 1 to plaintiff's first Request for Admissions and Paragraphs 3–5 of the Re-

quest). Skandia is presently attempting to both amend its original answer to the complaint as well as to implead a large number of alleged co-insurers, three insurance brokers, and the Commissioner of Insurance of the Commonwealth of Puerto Rico ("Commissioner"). We have no reservations regarding the amendment of the answer. Rule 15(a) of the Federal Rules of Civil Procedure. We see no undue delay, bad faith, dilatory motive, or prejudice to the adverse party sufficient to hold otherwise. Plaintiff himself has stated that defendant's motions will soon be academic as plaintiff intends to file an amended complaint. (See Memorandum in opposition to defendant's motions, filed October 5, 1978, at p. 2).

The motion for leave to implead does pose a problem. Skandia has moved for leave to implead the co-reinsurers of Commonwealth, and certain insurance brokers, alleging that all of them may be liable to defendant on the basis of (1) Skandia's alleged entitlement to subrogation rights as a guarantor; (2) existence of a constructive trust or an equitable lien as to the reinsurance proceeds retained by the co-reinsurers. Defendant admits that the endorsement was validly signed by one of its officers, but avers that the issuance of the endorsement had as its condition precedent that Commonwealth obtain commitments from the co-reinsurers for any payments made pursuant to the endorsement, according to the proportionate treaty shares of each of the co-reinsurers. Skandia alleges that the co-reinsurers were fully aware of this condition and of the endorsement agreement. Brokers Interocean Agency, J. H. Minet and Co., and Sedgwick Forbes, were allegedly requested by Skandia to obtain indemnity agreements from certain co-reinsurers, which the brokers supposedly failed to do. According to Skandia, since Commonwealth did not obtain the aforementioned agreements through the brokers or directly from the co-reinsurers, the endorsement was issued without authority and defendant is entitled to rescission. Skandia could then be held liable only under the reinsurance treaties, as an ordinary reinsurer on an equal footing with the other reinsurers. This would also imply that plaintiff would not be in privity of contract with Skandia and would have no direct action against defendant. Appleman, *Insurance Law and Practice*, Section 7694. Alternatively, defendant alleges that if the endorsement was indeed issued validly, the co-reinsurers would be liable on the endorsement under the reinsurance treaties. Skandia avers that if Commonwealth had remained solvent,

> "the co-reinsurers would have been required to pay Commonwealth the amounts owing by virtue of this loss under the reinsurance agreements between Commonwealth and these reinsurers."

█ We hold that Skandia may not be allowed to implead the co-reinsurers. Skandia's claim against the co-reinsurers appears to be independent from the action at bar. Under the Federal Rules of Civil Procedure, a "claim" is a group or aggregate of operative facts giving ground or occasion for judicial action. Moore's *Federal Practice* 14.07. The "operative facts" in plaintiff's claim against Skandia are: (1) the issuance of the insurance policy by Commonwealth; (2) endorsement of said policy by Skandia; (3) Commonwealth's acceptance of the validity of plaintiff's claim on the policy; (4) failure of Commonwealth to pay within the specified time. The operative facts in Skandia's claim against the co-reinsurers and brokers would be: (1) the terms of the reinsurance treaties between Commonwealth and the reinsurers; (2) the co-reinsurer's notice of the condition precedent agreed upon by plaintiff and Skandia; (3) the co-reinsurer's failure to act thereupon; (4) Commonwealth's acceptance of the validity of plaintiff's claim; (5) Commonwealth's insolvency. We believe that the operative facts involved in defendant's third party claim against the brokers and co-reinsurers are sufficiently distinct as to give rise to an independent claim. But this is not all.

The record does not include a copy of the reinsurance treaty between Commonwealth and Skandia or any of the other reinsurers.

However, we are struck with a flaw in defendant's reasoning so basic that the specific terms of the treaties are rendered irrelevant. Granted that Commonwealth, if solvent, would have been able to claim reinsurance proceeds from the co-reinsurers. Granted too, that if there had been a condition precedent to the endorsement agreement, the endorsement may have been issued by Commonwealth without authority. Yet, we fail to see how these arguments, singly or in combination, can lead to the conclusion that the defendant has a proper third party claim against the co-reinsurers. Commonwealth's purported lack of authority in issuing the endorsement would imply, at most, that Commonwealth would be liable to Skandia for breach of the condition precedent or (a highly questionable proposition) that the endorsement may be invalid. And if Commonwealth had been solvent, all the co-reinsurers would indeed be obliged to pay their prorata shares to reimburse Commonwealth for any payments it made. But the fact is that Commonwealth is not solvent and was not able to satisfy plaintiff's claim within the time stipulated in the policy. More importantly, there exists in this case an endorsement which bound one, and only one, of the reinsurers to pay a specific insured for any losses upon Commonwealth's failure to pay within a certain period. Hypothetical arguments based on a solvent Commonwealth Insurance Company are thus inapposite. The flaw in defendant's argument, then, is that there seems to exist only a very tenuous link between it and the co-reinsurers.

Defendant further contends that the issues raised by impleader of the co-reinsurers are related to the endorsement because the reinsurance proceeds owing under the treaties are in fact the same proceeds allegedly owing under the endorsement. But this is an oversimplification. As we suggested hereinabove, if defendant pays plaintiff, defendant could have an action against Commonwealth for its negligence or bad faith in failing to comply with the above stated condition precedent. As something like a guarantor for Commonwealth, once Skandia pays Commonwealth's creditor (plaintiff) Skandia can be subrogated against the principal, Commonwealth. Puerto Rico Civil Code, Art. 1738, Title 31, Laws of Puerto Rico Annotated, Section 4912. And under the reinsurance treaties, Commonwealth may be able to claim from the reinsurers their prorata shares under the treaty. But we strongly doubt that Skandia could be subrogated in Commonwealth's position to claim directly against the co-reinsurers, even if the reinsurance proceeds owing under the treaties would in theory or in practice be used by Commonwealth to satisfy Skandia's claim against it. Not only is Commonwealth's possible liability to Skandia entirely distinct from the reinsurer's liability to Commonwealth under the treaties, but also Commonwealth is subject to the special provisions of the Insurance Code for insurers in receivership and liquidation. Any funds flowing to Commonwealth must be distributed by the Insurance Commissioner with due regard for other pending claims against Commonwealth, the entire arrangement permeated by public policy concerns. The reinsurance proceeds cannot go directly to a party who, under the terms of an endorsement, is to pay a debt that in the first instance obliged Commonwealth.

 In the absence of a substantive right under state law, impleader is improper. *General Dynamics Corp. v. Adams,* 340 F.2d 271 (5th Cir., 1965). Skandia may have no basis to claim relief from the co-reinsurers; the claim, if any, may belong to Commonwealth, and not to Skandia. And a claim against a third party defendant must belong to the original defendant. Wright and Miller, *Federal Practice and Procedure,* Section 1446.

 We find that Skandia's claim against the co-reinsurers and brokers is too tenuous to justify an impleader. The procedural complexity alone in an action with a large number of third party defendants would be considerable. More importantly, new issues would have to be litigated, as discussed hereinabove. Plaintiff's claim, a simple contract claim on a policy, would be unduly

complicated. *Hazard v. Aetna Casualty and Surety Co.,* 253 F.Supp. 845 (D.C.D.C., 1966). Plaintiff would in all probability be prejudiced by this increased complexity, *Greene v. Kitner,* 279 F.Supp. 745 (M.D.Pa., 1968), particularly in an action, as this one, where trial by jury has been demanded. Quite possibly, the jury would be confused by the complexity of the action. *Powell v. Kull,* 53 F.R.D. 380 (M.D.Pa., 1971). A timely application for impleader should be granted except where it will delay or disadvantage the existing action and the third party claim obviously lacks merit. Wright and Miller, *Federal Practice and Procedure,* Section 1443. An examination of the two principal criteria—whether the claim asserted falls within the scope of impleader established by Rule 14, and the possibility of prejudice to plaintiff—leads to a finding in favor of denying Skandia's motion for leave to implead the co-reinsurers and the brokers. See: *John Hopkins University v. Hutton,* 40 F.R.D. 338 (D.C.Md., 1966); *Casey v. Calmar S.S. Corp.,* 138 F.Supp. 751, 752 (D.C.Del., 1956).

Skandia has also moved to implead the Insurance Commissioner of the Commonwealth of Puerto Rico, who as receiver-liquidator of Commonwealth, is its statutory successor and must initiate and defend all actions pertaining to Commonwealth. In this instance, Skandia's claim against Commonwealth does fall within the scope of Rule 14 and does not risk causing plaintiff unnecessary prejudice. Skandia's alleged causes of action against Commonwealth are clear cut: breach of contract for failure to comply with the condition precedent to the endorsement, duty to reimburse Skandia for moneys paid under the endorsement. It is also true that the Commissioner could have a claim pending against Skandia, which had better be resolved in this action in order to avoid imposing double liability on Skandia. Under the Puerto Rico Insurance Code, the Commissioner is entitled to request delivery of all Commonwealth assets in third parties' hands, under penalty of contempt of court. (See "Order" issued by Superior Court of Puerto Rico, San Juan Part, on December 7, 1977; Exh. A of defendants' "Amended Answer to the Complaint", Par. 5(m).

The Commissioner, as all State insurance commissioners with similar powers, are called upon to exercise broad judgment and discretion in the performance of their duties. Couch, *Insurance,* 22:55. The Commissioner must proceed with any litigation if he can be satisfied that further assets will be realized by so doing. *Id.,* 22:59. Conceivably, if not made a party to this action, the Commissioner could hold that Skandia is liable for its percentage of reinsurance participation. He could initiate court action against Skandia, even though Skandia may already have paid out plaintiff's claim. A ruling by the Court regarding the Commissioner's rights vis a vis Skandia is thus necessary to protect Skandia against multiple liability.

Skandia advances other grounds for finding the brokers and the reinsurers as well as Commonwealth proper third party defendants—principally, that any reinsurance proceeds which might be paid by the receiver-liquidator are subject to a constructive trust by virtue of a constructive fraud or breach of fiduciary relationship. Yet, these commonlaw principles are inapposite to an action brought under our diversity jurisdiction. Puerto Rico civil law, rather, is the law to be applied. The figures in Puerto Rico law most like the above-stated relationships, are unjust enrichment and quasi-contracts; neither may properly be applied to the facts of the instant action. Quasi-contracts, regulated by the Civil Code, Arts. 1787–1801, Title 31, Laws of Puerto Rico Annotated, Sections 5091–5127, essentially regulate circumstances where no agreement exists. Manresa, *Codigo Civil Español,* Vol. XII, p. 580 (1951). An agreement did exist in the case at bar, the special endorsement to plaintiff's policy. Unjust enrichment is an equitable doctrine in the civil law which, unlike quasi-contracts, lacks even any generalized treatment in the positive law. The elements for its construction are to be found in isolated form in the Civil Code and in the Court decisions. Ennecerus, Kipp, Wolff, *Tratado de Derecho Civil,*

Vol. II, Pt. 2, 585 (1950). Nevertheless, certain points clearly emerge. One of the central characteristics of unjust enrichment is its subsidiary nature, and its inapplicability where relief at law is not available. Planiol, *Civil Law Treatise,* Vol. 2, p. 539 (1959). In fact that is precisely the reason why this principle "does not invade the entire law". *Id.* at 540. This is quite different in common law systems. There, if a plaintiff can choose between a remedy at law and the constructive trust, it. is not necessary that plaintiff prove the inadequacy of the remedy at law. Bogert, *Trusts and Trustees,* Section 472. "A constructive trust will be imposed to prevent unjust enrichment regardless of the existence of a remedy at law." *Driscoll v. Burlington-Bristol Bridge Co.,* 28 N.J.Super. 1, 99 A.2d 829 (1953). However, even the common law decisions are not unanimous on this point and there are some decisions (including *Osin v. Johnson,* 100 U.S.App.D.C. 230, 234 F.2d 653, 656 (1957) cited by defendant) and dicta requiring, as in the civil law, a showing that no adequate remedy at law is available. As concluded hereinabove, defendant does have an adequate remedy at law (third party complaint) against Commonwealth, which remedy defendant has in fact chosen to invoke.

Wherefore, in view of the preceding, defendant's motion for leave to amend its answer is GRANTED; and the motion for leave to implead is DENIED with respect to the co-reinsurers and brokers and GRANTED with respect to the Commissioner of Insurance of the Commonwealth of Puerto Rico, as receiver-liquidator of the Commonwealth Insurance Co.

IT IS SO ORDERED.