CARDELL, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND J. RICHARD HUDANICH, PLAINTIFFS, v. THE TOWNSHIP OF MADISON, A MUNICIPAL CORPORATION IN THE COUNTY OF MIDDLESEX, STATE OF NEW JERSEY, AND MANZO CONTRACTING CO., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided March 13, 1969.

*Mr. Stewart M. Hutt* for plaintiffs (*Messrs. Hutt & Berkow,* attorneys).

*Mr. Marc J. Gordon* for defendant Township of Madison.

*Mr. Mark L. Stanton* for defendant Manzo Contracting Company (*Messrs. Stanton & Recht,* attorneys).

SEIDMAN, J. C. C. (temporarily assigned). In these proceedings in lieu of prerogative writ, plaintiffs Cardell, Inc., and J. Richard Hudanich seek to compel the defendant Township of Madison to award to the corporate plaintiff as low bidder a contract for resurfacing of various streets. Manzo Contracting Co., the codefendant, claims that it had been awarded the contract as the lowest bidder and that the municipality could not thereafter validly rescind the award and reject all bids. The inclusion of Hudanich, a resident and taxpayer of the municipality, as a plaintiff, is presumably technical in nature, designed to enable the raising of issues not available to a bidder. See *Camden Plaza Parking v. City of Camden,* 16 *N. J.* 150, 158 (1954).

Since the basic facts are not in substantial dispute, the parties agreed at pre-trial conference that the matter should be considered at final hearing as though on motions and cross-motions for summary judgment.

On or about October 1, 1968, the Township of Madison advertised for the receipt of bids for the resurfacing of various municipal streets. Cardell and Manzo, duly pre-qualified, submitted bids on the forms and in the manner prescribed by the specifications. The bids were opened at a council meeting held October 10, 1968. Cardell's proposal contained a grand total bid of $975,850.00; Manzo's bid was $898,810.00. Upon a tabulation by the municipal engineer, mathematical errors were discovered in Cardell's bid, which, the plaintiffs contend, reduced its bid to a corrected total of $873,250.00, thus making Cardell the lowest responsible bidder. The next night, at a special meeting of the Township Council, a resolution was adopted declaring Manzo the lowest bidder and awarding it the contract. On October 18, the plaintiffs filed their complaint in lieu of prerogative writ. At a subsequent special meeting held October 31, another resolution was adopted rescinding the one of October 11, rejecting all the bids, and directing the readvertising for new bids.

Cardell argues that the determination of the corrected bid price, having been done in accordance with the specifications, made it the lowest bidder; consequently, it should have been awarded the contract. The Township claims that the errors in the proposal invalidated Cardell's bid. With respect to Manzo, whose contention is simply that the award to it should be reinstated, the Township asserts that it reserved in the specifications the right to reject any and all proposals.

The form of proposal to be submitted by prospective bidders called for the submission of unit prices for seven items, with a stated total price bid for all items. Cardell's proposal was as follows:

"Item 1 Excavate and remove Pavement
and or unclassified Material
10,000 Cubic yards @ $10.00 per C. Y.
Ten dollars and no cents                    $10,000.00
(Write Unit Price)
Item 2 Furnish and Place and Compact
Quarry Stone Type 5, Class A

10,000 Cubic Yards @ $10.00 per C. Y.

Ten Dollars and no cents                    $100,000.00

(Write Unit Price)

Item 3 Water Valve Boxes Raised and
Maintained to Grade
350 Each @$25.00 per each

Twenty five Dollars and no cents            $   8,750.00

(Write Unit Price)

Item 4 Manholes Reset to Grade
560 Each @$25.00 per each

Twenty five Dollars and no cents            $   1,400.00

(Write Unit Price)

Item 5 Furnish and Apply Asphalt Emulsion
(RS-1) as directed by the Engineer
38,000 Gallons @$0.25 per Gal.

Twenty five Cents                           $   9,500.00

(Write Unit Price)

Item 6 Furnish and Place Bituminous Con-
crete Leveling Course
15,000 Tons @$11.00 per ton

Eleven Dollars and no cents                 $165,000.00

(Write Unit Price)

Item 7 Furnish and Place Bituminous
Concrete Surface Course F. A. B. C-1
52,600 Tons @$11.00 per ton

Eleven Dollars and no cents                 $578,600.00

(Write Unit Price)
The Total Price Bid For All
Items under this Contract is                $975,850.00"

The unit prices, both in figures and words, the extended totals, and the grand total were all hand-written.

The mathematical errors contained in the proposal were these:

1. The extensions, as set forth, actually totalled $873,250.00, rather than $975,850.00.

2. In Item 1, the quoted unit price of $10.00 for 10,000 cubic yards should have produced an extended total of $100,000.00, whereas the actual extension was $10,000.00.

3. In Item 4, the resetting of 560 manhole covers to grade at $25.00 each should have totalled $14,000.00, not $1,400.00.

It is observed that, had the extensions conformed to the quantities multiplied by the unit prices, the total would have been as indicated; namely, $975,850.00.

In support of the contention that Cardell was the low bidder, plaintiffs refer to the computations made by the municipal engineer pursuant to paragraph 1. .14 of the specifications, captioned "Comparison of Bids", which reads as follows:

"For the purpose of comparison of bids received, the grand total stated in the Proposal will be considered to be the amount bid for the project, with the exception that the total of each item must equal the grand total. Should the grand total be unequal to the sum of the individual totals, it will be made equal to the sum of these totals. Should it be found that the total of any item is not equal to the product of the quantity and the unit price, the unit price will be assumed to be the total divided by the item quantity."

On the comparison sheet prepared by the municipal engineer, to reconcile the total of the extended amounts, he calculated the unit price in Item 1 to be $1.00, and the one in Item 4 to be $2.50. As noted above, the plaintiffs contend that the corrected figures made Cardell the lowest bidder, entitling it to the contract. The contention is unsound.

One who claims to be the lowest bidder may seek a judicial review of the award of a municipal contract, but "must stand or fall on its own entitlement to the contract". *William A. Carey & Co. v. Borough of Fair Lawn,* 37 *N. J. Super.* 159, 168 (*App. Div.* 1955); *J. Turco Paving Con., Inc. v. City Council of Orange,* 89 *N. J. Super.* 93, 100 (*App. Div.* 1965).

Cardell argues that the specifications anticipated the possibility of errors in the preparation of a bid; and, since provision was made for the procedure to be followed in such event, the municipal engineer's computations control, thereby establishing Cardell as low bidder. This reasoning, in my view, is a misconception of the scope of the applicable specification.

The evident purpose of the specification was to enable the engineer, for comparison purposes, to check the bid computations, and, if errors were discovered, to utilize the given formula for reconciling the computations. Thus, in the instant case, upon adding the item totals, the engineer noted the grand total to be $873,250.00, and he placed that figure on his comparison sheet. Applying the formula further, he changed the unit price for Item 1 from $10.00 to $1.00, and the unit price for Item 4 from $25.00 to $2.50. Then, also in accordance with the specification, he forwarded the proposals to the Township Council for consideration.

Cardell claims that the prescribed procedure removed any doubt or ambiguity as to the amount of the bid or the unit prices. This is not so. The engineer's calculation merely sought to reconcile the computations made by the bidder. The doubts or ambiguities remained. For example, in Item 1 Cardell inserted a unit price of $10.00 in figures and then wrote the amount in words. Since the quantity was 10,000 cubic yards, the total should have been $100,000.00; instead, it was $10,000.00. Where was the error? Was it in the extended figure, or in the unit price? Although the specification provided a method of reconciliation, it could not thereby establish the bidder's intent at the time the proposal was prepared. The same reasoning applies to Item 4. According to the unit price of $25.00, stated in both words and figures, the extension should have been $14,000.00, not $1400.00. A significant indication of what the bidder may actually have intended is the total bid of $975,850.00, which would have been correct had the extension of Items 1 and 4 corresponded to the inserted unit prices.

It is not necessary, however, to determine the bidder's intent. The facts are, irrespective of the specification, that the total figure was $975,850.00; and that the unit prices in question were $10.00 and $25.00. If the low bid is to depend upon the engineer's calculations, made for comparison purposes, then it is not necessarily the one submitted by the bidder, but rather, in the case of errors, the revised one pre-

pared by the municipal engineer. To allow such result, in the face of uncertainties created by the bidder itself, would be manifestly unjust to other bidders and contrary to the spirit, if not the letter, of the applicable statute. *N. J. S. A.* 40:50–1. In such event, the bidder responsible for the errors could await the opening and reading of all the proposals, and then, with knowledge of what his competitors had done, decide whether to accept the engineer's computations. The other bidders would be prejudiced by an advantage their competitor had gained through its own carelessness. All bidders must be put on the same footing. *Case v. Trenton,* 76 *N. J. L.* 696, 699 (*E. & A.* 1909) ; *Skakel v. North Bergen,* 37 *N. J.* 369, 378 (1962).

The fact that Cardell, by instituting suit, has expressed its willingness to do the work for the adjusted amount cannot control, since the action taken was unilateral, and it does not follow therefrom that Cardell could not have withdrawn its bid upon discovery of the errors. A competitive bid is an option, and if given for a consideration, is both an offer and a unilateral contract. The distinguishing characteristic is that it imposes no binding obligations upon the person holding the option; but, when the option is accepted, it becomes a contract. *Conduit & Foundation Corp. v. City of Atlantic City,* 2 *N. J. Super.* 433, 438–439 (*Ch. Div.* 1949). In the case of unilateral mistake by an offeror, relief in the form of rescission may be granted by a court of equity if appropriate conditions exist. *Conduit & Foundation Corp., supra,* at *pp.* 439–440. See also *Carlin v. City of Newark,* 36 *N. J. Super.* 74, 86 (*Law Div.* 1955). There is no need to determine whether equities were present in the instant case justifying rescission, had the issue of withdrawal arisen. It is enough that litigation might have ensued, the outcome of which would be uncertain. Aside from the issue of rescission, there is also a question whether, had the municipality decided to accept the amount as adjusted by the engineer, such acceptance would have corresponded to the essential terms contained in the proposal.

Considering all the circumstances of the case, I conclude that Cardell's bid, because of the errors, was sufficiently irregular as to affect fair and competitive bidding, and that the engineer's computations did not convert the proposal into the lowest bid. The record before me does not indicate that, in refusing to accept the adjusted figure, the municipality acted unfairly, unreasonably, and beyond its statutory power. See *Fereday & Meyer Co., Inc., v. Elizabeth Bd. of Public Works,* 27 *N. J.* 218, 224 (1958).

Accordingly, judgment will be entered dismissing the complaint of the plaintiffs.

I turn now to Manzo's cross-claim for an adjudication that it is entitled to the award of the contract. As noted earlier herein, it is undisputed that the municipal council adopted a resolution on October 11, 1968, declaring Manzo to be the lowest qualified bidder; and that on October 31 another resolution was adopted rescinding the earlier one, rejecting all bids received on October 10, and ordering the readvertising for new bids.

The issue here is not whether a governing body can reject any and all bids upon their receipt. This problem, commented the court in *Poling v. Roman,* 86 *N. J. Super.* 484, 488 (*Law Div.* 1965), is a troublesome one. In the frequently cited case of *Armitage v. Newark,* 86 *N. J. L.* 5 (*Sup. Ct.* 1914), the court found that the statute then in effect allowed the rejection of any and all bids. Subsequently, the statute was amended and the rejection power deleted. Whether the power can now be reserved and exercised by a municipality has not been clearly and definitely determined. In *Poling, supra,* at *p.* 489, the court merely said that "absent a reservation a municipality may not arbitrarily or capriciously reject all bids, but must award the contract to the lowest responsible bidder unless fair-minded and reasonable men would deem it not in the best interests of the municipality."

To state it precisely, the issue before the court is whether Manzo was the lowest responsible bidder and, if so, whether a

duly adopted resolution so declaring could thereafter be rescinded.

The general rule is that the acceptance of a valid bid by the proper municipal authorities, where all legal requirements are observed, constitutes a binding contract, 10 *McQuillen, Municipal Corporations* (*3rd Ed.* 1966), § 29.78. It should be observed, however, that Specification 1.1.1, captioned "Award of Contract", reads as follows:

"Award, if made, will be to the lowest responsible bidder whose proposal conforms in all respects to the requirements stated herein.

"The award shall be made by the Town Council at a regular or Special Township meeting. The award shall not be binding upon the Township until the contract has been executed by the Bidder and the Township, nor shall any work be performed on account of the proposed Contract until the Contract has been duly executed and delivered."

Other specifications relating to the award and execution of the contract (1.1.2, Return of Proposal Guaranties; 1.1.3, Progress Schedule; 1.1.4, Execution Contract) indicate that within 10 days of the date of the award, a performance bond and progress schedule are to be furnished and the contract executed. The municipality does not contend that Manzo failed to comply with the requirements preceding the execution of the contract. Even if it be assumed that the right to reject any and all bids can be reserved, the statute may not be evaded under the color of such rejection. *Armitage v. Newark, supra,* at *p.* 9; *Poling v. Roman, supra,* at *p.* 488; *Scatuorchio v. Jersey City Incinerator Authority,* 14 *N. J.* 72 (1953).

By law, where bidding is required, the contract must be awarded to the lowest responsible bidder. *N. J. S. A.* 40:50–1. Although the acceptance of the bid, according to the specifications in this case, is not binding until the execution of the contract, it does not appear from the stated facts that the signing of the contract was to be more than a formality, subject only to the furnishing of a performance bond and a progress schedule, neither of which is in issue. The resolution of

October 31 gives no reasons for the rescission of the award to Manzo. All that appears is the municipality's factual recitation in the pretrial order, which the court will accept in view of the stipulation by the parties to proceed as though on motion and cross-motions for summary judgment. It is conceded therein that the Manzo bid was declared the lowest responsible bid and that the council unanimously determined to award it the contract. Following the institution of suit by Cardell the matter was discussed at a council meeting on October 31 and "At that time the Township Engineer indicated that, in his opinion, the price quoted for the work to be done was high, and that readvertising might result in lower bids. In an effort to avoid delay and avoid litigation and to afford itself the opportunity of receiving lower bids, the Council adopted a resolution rescinding the October 11, 1968 resolution and directing the re-advertisement for new bids."

If the Council was, in fact, motivated by a desire to obtain lower bids, it should have acted before accepting Manzo's bid, since the same information was available at that time and the engineer could have made an appropriate recommendation to the Council. The real reason seems to have been the fear of litigation; however, the action taken by the governing body not only failed to resolve Cardell's suit, it also produced Manzo's cross-claim for affirmative relief.

I conclude that there was no valid basis for the rescission of the award to Manzo; consequently, the municipal resolution of October 31, 1968, is vacated and set aside, and the Township of Madison is directed to proceed with the execution of the required contract, provided Manzo has furnished or will furnish forthwith the requisite performance bond and progress schedule.

An order for judgment consistent with my conclusions shall be submitted promptly, consented to with respect to form or settled upon notice.