110 N.J. Super. 414 (1970)
265 A.2d 842
CATALDO CONSTRUCTION COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
COUNTY OF ESSEX, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 20, 1970.
*415 Mr. A. Vincent Gasparine, attorney for plaintiff.
*416 Mr. Irwin I. Kimmelman, attorney for defendant (Mr. Anthony L. Cecere, appearing).
HERBERT, J.S.C.
This case arises out of competitive bidding on public construction work. Cataldo Construction Company (Cataldo) is a general contractor having its business office in Orange. In response to advertising by Essex County (county), Cataldo submitted, on May 22, 1969, a bid of $24,233 for work to be done on the lower Chatham Bridge, which spans the Passaic River between Morris and Essex Counties. To its bid Cataldo attached a certified deposit check in the amount of $2,500, as required by the instructions to bidders.
When the bids were opened on May 22, 1969 the Cataldo bid was found to be the lowest of those submitted. A resolution of the board of freeholders of Essex formally approved the award of the contract to Cataldo that same day. Although the advertisements soliciting bids made no mention of any active participation in the project by Morris County, the Essex resolution was expressly made contingent on a concurring resolution by the board of freeholders of Morris County. Such a concurring resolution was adopted in Morris six days later, on May 28, 1969.
Cataldo's bid had been prepared hurriedly to meet the advertised deadline. As a result of the haste a serious mistake was made in the figure submitted. One of the amounts transferred from Cataldo's work sheet to its sheet for totals was mistakenly listed at $13,822, rather than at $23,822, as it should have been. The mistake was then carried over to the typewritten proposal, which was delivered by hand to the county a few moments before bids were opened.
The $10,000 mistake was discovered the day after the bids were opened and the Essex resolution adopted, but five days before the adoption of the Morris resolution. No proofs have been offered as to whether Cataldo (1) knew at this stage that the Essex resolution was contingent on concurrence by the freeholders of Morris County, and (2) made any efforts *417 to notify the proper parties in Morris before the adoption of that county's resolution. It is clear, however, that immediately upon the discovery of the error Cataldo's president telephoned the Essex County engineer to explain the mistake. A few days later, apparently before the Morris resolution was adopted, Cataldo's president met with the Essex engineer, showed him the work sheets, and was told nothing could be done to correct the error. By letter dated May 28, 1969 Cataldo again gave Essex County notice of the error and requested that its bid be withdrawn.
Essex County has refused to rescind the bid and return Cataldo's deposit check. Cataldo commenced this action as a result, naming Essex County as the sole defendant. Both parties are treating the dispute as a matter solely between themselves and not involving Morris County.
Cross-motions for summary judgment are before the court. Cataldo seeks rescission of the bid and return of the deposit; the county asserts that the bid should not be rescinded and that it is entitled to retain the deposit as a forfeiture for Cataldo's failure to sign a contract and perform the work at a price of $24,233. There are no issues of fact, as the county's brief admits all of the facts as stated by Cataldo.
The law is clear that a competitive bid is an option based upon a valuable consideration, namely the privilege of bidding and the legal assurance to the successful bidder of an award as against all competitors. Conduit & Foundation Corp. v. Atlantic City, 2 N.J. Super. 433, 438 (Ch. Div. 1949); Lupfer & Remick v. Freeholders of Atlantic, 87 N.J. Eq. 491, 497 (Ch. 1917). As such, the bid is both an offer and a unilateral contract; when it is accepted, it becomes a mutually binding contract. Conduit & Foundation Corp. v. Atlantic City, supra, at 439; Schlein v. Gairoard, 127 N.J.L. 358, 359 (E. & A. 1941). So here, the acceptance of Cataldo's bid by the appropriate governing bodies of Essex and Morris Counties created a valid contract.
The question becomes, then, whether Cataldo is to be relieved in equity from the obligations of its contract. The *418 sole ground asserted for relief is Cataldo's unilateral mistake in the computation of its bid. "[I]t is the general rule that a unilateral mistake of fact, unknown to the other party, is not ordinarily ground for avoidance or rescission." N.Y. Sash, etc., Inc. v. National House, etc., Inc., 131 N.J.L. 466 (E. & A. 1944); 17 C.J.S., Contracts, § 143. Nevertheless, there can be no question but that equity may, under appropriate circumstances, grant relief by way of rescission for a unilateral mistake of fact. Cardell, Inc. v. Madison Tp., 105 N.J. Super. 594, 600 (Law Div. 1969), rev'd on other grounds, 54 N.J. 151 (1969); Panco v. Rogers, 19 N.J. Super. 12, 17 (Ch. Div. 1952); Conduit & Foundation Corp. v. Atlantic City, supra, at 439; Barlow v. Jones, 87 A. 649 (Ch. 1913  not officially reported); 17 C.J.S., Contracts, § 143; 17A C.J.S., Contracts, § 418(2). To qualify for the equitable relief sought, Cataldo must show special circumstances justifying a departure from the generally controlling principle that parties are bound by the contracts they make for themselves.
The leading case in New Jersey on the question at hand is Conduit & Foundation Corp., supra. There, as here, plaintiff erred in computing a bid for the performance of construction work and the resultant figure was substantially lower than it would otherwise have been. Although the city was informed of the error before it accepted the bid, still it refused to allow the attempted withdrawal of the bid and insisted on its right of acceptance. Plaintiff sued for equitable relief on the ground of unilateral mistake of fact. The case was tried before Judge (now Justice) Haneman, then sitting as a Superior Court judge in Chancery. In his reported opinion, Judge Haneman set forth the criteria for relief as follows.
The essential conditions to such relief by way of rescission for mistake are (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred *419 notwithstanding the exercise of reasonable care by the party making the mistake, and (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for loss of his bargain. [2 N.J. Super. at 440]
Judge Haneman found that under the circumstances before him each of these conditions had been met. That being the case, he allowed plaintiff to rescind the bid and recover the accompanying deposit.
For additional authority similar to Conduit & Foundation Corp., supra, see State Highway Commission v. State Construction Company, 203 Or. 414, 280 P.2d 370, 52 A.L.R. 2d 779 (Sup. Ct. 1955); Annotation, "Bid for public contract  mistake," 52 A.L.R.2d 792 (1955). In the cited annotation many cases are collected.
Putting aside for the moment the question of Cataldo's care in the preparation of its bid (the third criterion listed above), it appears that Cataldo is otherwise entitled to the relief sought.
The mistake reduced Cataldo's proper bid from $34,233 to $24,233, a substantial margin of error. Moreover, Essex County's refusal to allow Cataldo to revoke its bid upon discovery and immediate notification of the error  and before the necessary acceptance of the bid by Morris County  lends additional strength to the conclusion that to enforce the contract here as actually made would be unconscionable. As Judge Haneman said in Conduit & Foundation Corp., supra:
Not only was the mistake of so great a consequence, but the defendant's conduct as well was such as would make an enforcement of the contract unconscionable. [2 N.J. Super. at 441]
The matter to which the mistake related  the price  was obviously a material feature of the contract.
Although the remedy of rescission for unilateral mistake ordinarily is only available so long as the status quo ante can be restored, Dencer v. Erb, 142 N.J. Eq. 422, 429 (Ch. *420 1948); Howell v. Baker, 106 N.J. Eq. 434, 439 (Ch. 1930), there is no indication here that Essex County would be, or has been, seriously prejudiced by rescission, except for the loss of its bargain. It is true that in Conduit & Foundation Corp., supra, the mistake was discovered and revocation of the bid attempted prior to acceptance by the contracting governmental body, with Judge Haneman proclaiming that "under the facts here present, such bid was promptly rescinded within time." 2 N.J. Super. at 442. However, in Barlow v. Jones, supra, an earlier case cited with approval in the Conduit & Foundation Corp. opinion, a contractor was allowed rescission of his bid and return of his deposit on the ground of his own unilateral mistake of fact, despite the fact that the error there was first discovered after the bid had already been accepted. Vice-Chancellor Reed in Barlow pointed out that there had been no prejudice to defendants such as would bar plaintiff's right to relief:
Notice was promptly given to the commission of the existence of the mistake and of Mr. Barlow's inability to execute the contract. The commission then accepted the bid of the next highest bidder just as it would have done had Mr. Barlow never bid. There has been no change in the status of the parties induced by the belief that Barlow would execute his contract or by any negligence in promptly reporting the mistake. [87 A. at 650]
Here, Cataldo discovered its error and called the attention of Essex County to it before the acceptance of Morris County and at a time when no serious prejudice had been suffered by Essex County. Cataldo's claim for equitable relief cannot be defeated on this basis.
So we come finally to the troublesome issue of whether Cataldo exercised reasonable care in the preparation of its bid. As was indicated in the preceding discussion of Conduit & Foundation Corp., equitable relief is not available for unilateral mistakes of fact caused by a failure to exercise reasonable care. Crane v. Bielski, 15 N.J. 342 (1954); Panco v. Rogers, supra; Fidelity Chemical Products Corp. v. Rubino, 1 N.J. Super. 184 (App Div. 1949); Murray v. *421 D'Orsi, 98 N.J. Eq. 548, 550 (Ch. 1925). The question then becomes, what is "reasonable"? Whether the negligence of the mistaken party is of such a degree as to bar equitable relief depends in each case on the particular circumstances. In Crane, supra, the court made these comments:
There are many instances in which the equity courts have in their discretion refused relief where there was negligence on the part of him by whom the doctrine of mistake was invoked. * * * But in Murray v. D'Orsi, 98 N.J. Eq. 548 (Ch. 1925), the court observed that "a party's own negligence will not always occasion refusal of relief * * * each instance of negligence must depend to a great extent upon its own circumstances," and that in many instances "the complaining party has been relieved of the consequences of his mistake of fact, even where it was due to his own clear negligence."

* * * * * * * *
"Mistake," by its very definition, implies some degree of negligence. Human failing is its essence and it denotes error of judgment. However, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to set aside the sale [15 N.J. at 347 and 348]
Cataldo does not have proofs to excuse its mistake as strong as the evidence offered by the contractors in Conduit & Foundation Corp. and in Barlow v. Jones, supra, to excuse their respective errors. In Conduit & Foundation Corp. it was shown that work on the contractor's bid was quite complex and time consuming, and that on the whole it had been carefully done. Judge Haneman concluded:
Under the facts here present, the plaintiff exercised a reasonable degree of care in preparing its bid. It was not guilty of a lack of that degree of care which a reasonably prudent person should exercise. [2 N.J. Super. at 442]
And in Barlow v. Jones, supra, the proofs indicated that the contractor was a sick man who broke down during the preparation of his bid and was unable to continue; the error in that case was produced by the contractor's bookkeeper, who compassionately and hurriedly completed the bid. Vice-Chancellor Reed decided under the circumstances that "the *422 mistake was one which * * * might occur to a careful man and was certainly one which cannot be characterized as grossly negligent." [87 A. at 650]
In the present case the affidavits of Anthony G. Cataldo and his estimator, Carr, state that Carr got his instructions to prepare a bid about one week before the bidding date; that Carr met with delays in getting quotations on the prices of some materials needed for the work; that it was not until about ten o'clock in the morning of the bidding date that he was able to obtain final figures which, after a brief conference with Cataldo, were typed hurriedly on the bid form prescribed by the county. Then the bid was taken by automobile from the office of the Cataldo company to the Hall of Records just in time for delivery at the appointed hour of eleven o'clock. Carr's affidavit reads in part:
6. I gave the work sheets to the secretary with instructions to quickly prepare the typewritten bid. In my haste I transposed the sum of $13,822.00 from my working cost sheet P-1, instead of the true sum of $23,822.00 to my total sheet P-3-A, which shows a total of $24,233.00 instead of $34,233.00.
7. The form of bid to be typewritten consisted of only 3 total items to be typed. I instructed the secretary to fill in item 1 at $22,700.00, item 2 at $271.50 and item 3 at $261.50, totaling $24,233.00. Item 1 should have been $32,700.00 and the total therefore should have been $34,233.00. The secretary did not have the working cost sheets and could not check the figures.
Though pressure of time is the only real excuse, or explanation, for plaintiff's error, my conclusion is that relief should be granted. Discovery of the mistake and the giving of notice were timely. Because of the delay in getting price quotations on materials the final bid figures were worked out and put in form for submission in an atmosphere of great haste. In that atmosphere the reporting of an incorrect figure seems normal enough to be excusable. Loss of all benefits of a bargain based on the mistake appears to be the only disadvantage to the county which will flow from the granting of relief. At oral argument I was furnished with the following information. When Cataldo gave notice of its mistake *423 and refused to sign a contract at $24,233, new bids were advertised for promptly and resulted in a low bid by Cataldo at $34,233 (or substantially that amount), that being in effect a corrected version of Cataldo's original bid and a figure lower than any bid received from any other bidder at the original bid opening. On this second Cataldo bid a contract was executed and in due course fully performed.
The annotation already mentioned (52 A.L.R.2d 792) shows that the current of decisions in a substantial number of jurisdictions has been strongly in favor of relief for the erring contractor in situations where a mistake is promptly discovered and called to the attention of the public body before the execution of a formal contract and there is no substantial disadvantage to the solicitor of the bids other than loss of a bargain based on the bidder's error.
There will be a judgment rescinding plaintiff's bid of May 22, 1969 and ordering the defendant to return to plaintiff the deposit of $2,500 made when the bid was submitted.