SEMPRE CONSTRUCTION CO., INC., PLAINTIFF, v. TOWNSHIP
OF MOUNT LAUREL AND CACON, INC., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Burlington County

Decided June 18, 1984.

*Richard R. Bonamo* for plaintiff (*Wilentz, Goldman & Spitzer*, attorneys).

*John E. Harrington* for defendant Township (*Schlesinger, Schlosser, Foy & Harrington*, attorneys).

*Donald R. Stemmer* for defendant Cacon, Inc. (*Pasquale J. Talarico*, attorney.)

WELLS, J.S.C.

This is an action to vacate the award of a contract for a municipal construction project involving excavation work. The action is by one of ten unsuccessful bidders against the Township of Mount Laurel ["Township"] and the apparent low bidder. Pending decision herein the Township agreed to stay commencement of the work.

The disputed bids were actually the second round received on the project, the first bids having all been rejected for a perceived ambiguity in the invitation to bid. The new invitation to bid requested bids on base work and eight 2,000 cubic yard alternates. The first round required unit price bids on the alternates while the second round asked for lump sum bids on each alternate. The Township reserved the right to make the award "on the base bid, or base bid plus alternates...."

Both Sempre Construction Co., Inc. and Cacon, Inc. submitted bids on each round. Sempre's initial bid was $222,798 for base work and $240,000 ($15 per cubic yard) for the eight alternates, totalling $462,798. Cacon's initial bid was $249,644 for base work and $128,000 ($8 per cubic yard) for the eight alternates, totalling $377,644. The parties' respective bids would have placed them 13th and 6th respectively among the 15 bidders. On the second round plaintiff Sempre submitted a new base bid of $233,240 ($10,422 over its first base bid) and $25,300 for the alternates ($214,700 under its prior alternate bid), totalling $258,540 or $240,258 lower than its original total bid.

Cacon submitted a new base bid of $251,644 ($2,000 over first base bid) and $64 for the alternates ($127,936 under its prior alternate bid), totalling $251,708 or $125,936 lower than its total original bid.

The bids were reviewed by Mt. Laurel's consultant, Kinsey Associates. The consultant noted that Cacon and one other bidder, Versatile Concrete Corp., had submitted "exceedingly low" bids for alternates. Versatile indicated that it "misread" the alternative and had submitted a per cubic yard price by mistake and might request to be released. Since Versatile was clearly out of the running however, no further action was taken. When similarly questioned, defendant Cacon indicated that it fully understood the bid and had intended to submit an $8 per 2,000 cubic yard alternate bid for each of the eight alternates. The consultant advised the Township that this bidding strategy was not unprecedented and meant that the contractor wanted "all of the work or none of it." The Township then resolved to award the contract to Cacon whose base bid plus alternates was $6,832 lower than plaintiff's, the next lowest bid.

■ The action was commenced in the Chancery Division on a verified complaint and order to show cause without restraints. *R.* 4:67–1. Since the action seeks to overturn municipal action the more appropriate forum is the Law Division by way of action in lieu of prerogative writs. *R.* 4:69–1 *et seq.* Restraints, if necessary, may be sought there. *R.* 4:69–3. *McKenna v. N.J. Highway Auth.*, 19 *N.J.* 270 (1955). Most, if not all, the cases involving disputes over bidding on public contracts have been brought in the Law Division. *See George Harms Constr. Co. v. Bor. of Lincoln Pk.*, 161 *N.J.Super.* 367 (Law Div.1978), and the cases cited therein. Accordingly, the matter will be transferred to the Law Division and will be decided on the merits under the standards applicable to an action in lieu of prerogative writs. *R.* 4:3–1(b).

Plaintiff claims that Cacon, the low bidder, wrote itself an option to be relieved from its bid by bidding a lump sum $8 for each of the eight alternates, a total of $64. Plaintiff points to defendant's $8 per cubic yard bid on the first round and contends that Cacon, had it wished to do so, upon assessing its bid after the bid opening, could have prevailed either on the Township or the Chancery Division to relieve it of its bid on the ground of unilateral mistake. Such an option, according to plaintiff, given to one bidder creates an unfair advantage which impugns the fundamental integrity of the bidding process since one bidder may not be bound by its bid.

There is support for plaintiff's basic contention that practices which affect the public bidding process adversely are prohibited and awards made or contracts entered into where unlawful or prohibited practices may have played a part will be set aside; even though there was no corruption or any actual adverse effect on the bidding process. *See Waste Disposal, Inc., v. Mayor and Council of Borough of Roselle Park,* 145 *N.J.Super.* 217 (App.Div.1976). Plaintiff also correctly points to cases wherein it was held that municipalities may not waive material bid requirements where doing so places the erring bidder in an advantageous position by giving such bidder the option to rescind his bid or conduct negotiations after the bid has been awarded. *See George Harms Constr. Co., v. Bor. of Lincoln Pk.,* 161 *N.J.Super.* 367 (Law Div.1978); *Cubic Western Data v. New Jersey Turnpike Authority,* 468 *F.Supp.* 59 (D.C.N.J.1978). In *George Harms, supra,* the low bidder failed to supply a statutorily mandated stockholder disclosure statement prior to the opening of bids. The Court found such statement to be an essential and material part of the contract which could not be waived or cured by subsequent submission. In *Cubic Western, supra,* the United States District Court held that a statutorily mandated letter of surety was similarly a non-waivable essential and material part of the contract incapable of subsequent cure. In each case the Court expressed concern that one bidder should not be placed in an advanta-

geous position relative to the other bidders and that once a bid is accepted it should not be subject to renegotiation.

The initial question herein presented then is whether the high base/low alternate bid strategy adopted by defendant Cacon constitutes an unlawful bidding practice or violates policies underlying public contract bidding. We point out initially that plaintiff herein points to no technical defect in Cacon's bid submission or in the Township's invitation to bid. This fact distinguishes both *Harms* and *Cubic Western*. If the Court were to accede to plaintiff's demand, it must of necessity vacate bids which are facially lawful. However, *Harms* and *Cubic Western* are distinguishable on a more significant point. In those cases the bidder was improperly permitted to exercise sole discretion after the bid opening to decide whether to submit documents without which the contract could not be enforced. Here, the high base-low alternate bid strategy grants the bidder only an inchoate opportunity to seek to be relieved from its bid from third persons (the governing body or court) not under its control. Such a strategy is a calculated gamble frought with attendant risk that relief from the bid, a purely discretionary decision, would not be granted. The essential conditions for rescission of a public contract for mistake are set forth in *Cataldo Constr. Co., v. Cty. of Essex*, 110 *N.J.Super.* 414 (Ch.Div.1970):

> (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable;
>
> (2) the matter as to which the mistake was made must relate to the material feature of the contract;
>
> (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and
>
> (4) it must be able to get relief by way of rescission without serious prejudice to the other party, except for the loss of his bargain.

*See also Conduit & Foundation Corp. v. Atlantic City*, 2 *N.J.Super.* 433 (Ch.Div.1949); *Barlow v. Jones*, 87 *A.* 649 (Ch.1913). Applying the above test, it is far from clear that defendant Cacon could have succeeded in an action for rescission. The municipality would certainly have directed the

Court's attention to the "all or nothing" strategy employed in such bids and argued that there in fact was no mistake. This would have been buttressed by the fact that the next lowest bidder submitted a total bid exceeding Cacon's by merely $6,832 indicating no mistake and/or no "unconscionability." Furthermore, strong arguments could be made that even if Cacon had made a mistake, it had not exercised "reasonable care."

Certainly much of the above is mere speculation. It is the very fact that defendant's ability to escape its bid rests on such speculation, however, which distinguishes this case from both *Harms* and *Cubic Data Systems*. We have already discussed the fact that Cacon, unlike the bidders in the above mentioned cases, would be gambling that the Township or Court would, in essence, render a "judgment call" in its favor. Relief would not depend upon whether the municipality or bidder performed a clearly defined statutorily mandated procedure, but upon whether the facts taken in their entirety, weighed and analyzed, support the view that a mistake has been made and is of such a nature as to cry out for equitable relief.

The case of *Cardell, Inc. v. Township of Madison*, 105 *N.J.Super.* 594 (Law Div.1969) aff'd 105 *N.J.Super.* 604 (App. Div.1969), rev'd 54 *N.J.* 151 (1969) involved a factually similar situation. Cardell had submitted a bid containing arithmatic errors in which the grand total exceeded the sum of item totals. Upon award of the bid to Manzo, a competing bidder, Cardell brought suit claiming that had its bid been adjusted in conformity with the "comparison of bids" specification, it would have been entitled to the award as the lowest bidder. Both the trial and appellate courts rejected Cardell's demand to vacate the award to Manzo and to award the contract to Cardell on the following grounds:

> [T]o allow such result, in the face of uncertainties created by the bidder itself, would be manifestly unjust to other bidders and contrary to the spirit, if not the letter of the applicable statute. *N.J.S.A.* 40:50–1. In such event, the bidder responsible for the errors could await the opening and reading of all the proposals, and then, with knowledge of what his competitors had done, decide whether to accept the engineer's computations. *Id.* at 600.

The New Jersey Supreme Court reversed the Appellate Division's decision, however, and adopted Judge Labrecque's dissenting opinion. That opinion specifically rejects the majority's reasoning

> Wholly aside from Cardell's claimed right, as low bidder to the contract the municipal taxpayers ... were entitled to the benefit of the lower bid. The possibility, envisioned by the trial judge, that Cardell might have sought to be relieved of its low bid upon discovery of the discrepancies noted by the engineer, afforded no ground for rejection. The same possibility may be present where the grand total submitted corresponds with the totals of the individual items.

In addition, if plaintiff's position is adopted every municipality inviting bids would be required to guess whether the lowest bidder made a mistake involving the potential for rescission before awarding the contract. Ironically a municipality receiving an unexpectedly low bid would be placed in a very uncomfortable position, since, if the contract is awarded to the low bidder, the next lowest bidder would have every incentive to institute costly litigation in the hope of having such bid thrown out. Even if the municipality's choice to award the contract was ultimately upheld, much of the benefit could be lost through the cost and delay associated with litigation.

Even more ironic, conclusiveness of the bidding procedure which plaintiff's counsel so eloquently entreated the Court to uphold and defend would be damaged far more by the adoption of plaintiff's position than by its rejection. Generally speaking, when a contractor submits a public bid, the bids are opened and one accepted as the lowest reasonable bid, all parties are aware that the winning bidder is obligated to perform under the contract as detailed in the invitation. If the low bidder decides to renege after reviewing the bids, he must go through the costly and risky process of arguing that he made a blunder. Review of case law indicates that, while such arguments have been successfully made, they are not at all common. If the Court were to adopt plaintiff's position, however, municipalities would be less likely to routinely award bids to the lowest bidder since such low bid might be subject to litigation. Disappointed bidders would have relatively little to

lose and potentially much to gain by challenging every contract awarded in such situations. Low bidders who subsequently do decide to renege, for whatever reason, could rely on this opinion for the proposition that, had the tables been turned, a high bidder could have had the contract vacated using plaintiff's theory. Finally courts throughout the state would find themselves in the troubling and awkward position that this Court finds itself in today: that of speculating as to whether a low bidder could have at some later date successfully argued for rescission in the face of vigorous assertions by the bidder himself that no mistake was made. In short, far from defending conclusiveness of the bidding process, plaintiff's theory would introduce uncertainty and threaten conclusiveness of the process at every stage of the bidding procedure.

■■ For the reasons stated the Court holds that the high base/low alternate bid strategy is a proper bidding practice where the municipal agency inviting the bids reserves the right to make the award on the base bid, or base bid plus alternates since then it may adequately judge the entire bid as to each bidder in determining to make an award. Since there is no dispute that this is what the Township did here, its decision must be upheld. The complaint is dismissed.