255 N.J. Super. 52 (1992)
604 A.2d 628
INTERTECH ASSOCIATES, INC., A PROFESSIONAL COMMUNICATIONS AND ELECTRONICS CONSULTING ENGINEERING FIRM AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1992.
Decided March 24, 1992.
*53 Before Judges HAVEY and CONLEY.
Susan E. Champion, First Assistant Corporate Counsel, argued the cause for appellant (Ralph L. DeLuccia, Jr., Corporation Counsel, attorney, Susan E. Champion on the brief).
James V. Segreto argued the cause for respondent (Segreto & Segreto, attorneys, James V. Segreto on the brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
Following a non-jury trial, plaintiff obtained a judgment which: 1) set aside a resolution of the Municipal Council (Council) of the City of Paterson (City) that rescinded the award of a contract to plaintiff and, 2) ordered the Council to sign a contract with plaintiff. The City appeals. Execution of the contract has been stayed pending appeal. We now reverse.
*54 In January 1990 the City solicited public bids on a contract for services in connection with the design and installation of a communications network system for its police and fire departments. The proposed network would include a radio system, cable consoles, base stations, satellite receivers, as well as an upgrading of the recording and telephone systems and a design for backup and uninterruptable power supply systems.
The original bids were to be received February 28, 1990. Prior to advertisement of this bid and during the fall and winter of 1989, plaintiff had sought to directly contract with the City without public bidding and had, at that time, submitted proposals. After the first bid was advertised, plaintiff objected to the necessity of a public bid because the services to be performed required a professional engineer and thus, it claimed, were exempt from the public bidding law. See N.J.S.A. 40A:11-5(1)(a)(i), N.J.S.A. 40A:11-2. At a bidders conference in February 1990, plaintiff objected to the requirement of a performance bond and a bid bond. It also objected to the remedies clause, Clause 14, in the form contract that accompanied the bid package and which the City expected the successful bidder to sign.
Subsequently, the bid specifications were amended to delete the requirement of a performance bond and the requirement that the bidder be a licensed engineer. The specifications, however, continued to require a bid bond and the form contract continued to contain the remedies clause. A second notice to bidders occurred in March 1990. Bids were to be received by March 14, 1990. The bid specifications continued to require a bid bond and the form contract expected to be signed by the successful bidder contained the remedies clause.
Plaintiff was the only bidder. However, it did not submit a bid bond and it excepted to the remedies clause. Specifically on an attached "Exhibit C", it included in its bid the following statements:

*55 Intertech Associates is pleased to advise the City of Paterson that we take no exceptions to the Technical and Engineering aspects of this Request for Bid. However, we do take the following Exceptions to the Contract terms and requirements:
1. As a Licensed Professional Engineering service, Intertech Associates is providing evidence of Errors and Omissions Insurance in lieu of Bid and Performance bonds (See Exhibit C1, attached). These Bonds are not available for a design service and are therefore unreasonable to request of a New Jersey Licensed Professional; by association, so is the cash deposit. Our State License is your assurance of Intertech Associates providing the quoted services at the designated fee and will honor this fee for the 75 day period as requested. Intertech Associates, therefore, is taking an exception to a "Bid" Security for a Professional Engineering design service.
2. Intertech Associates takes exception to clause 14, page 15 of the Contract entitled "Remedies", as the clause does not limit the amount claimed as remedy for consequential damages. Intertech Associates will accept a clause limiting damages to that covered by our $1,000,000.00 Errors and Omissions Policy.
Pursuant to the City's practices and policies concerning bids, the bids are normally opened by the Director of Purchasing whose supervisor is the Business Administrator. If there are any exceptions or deviations, the bid documents are forwarded to the Law Department for review by Corporation Counsel and a determination as to whether the exceptions or deviations are material and thus non-waivable. See Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 341 A.2d 327 (1975). If a bid does not contain exceptions or deviations and is otherwise in order, and it is the low bid, the Director will prepare a resolution for Council to consider.[1] The resolution, under these circumstances will have a certification signed by the Director that the "bid was found to be in order." The resolution is then sent to Corporation Counsel. Because no problems appear with a bid of this type, neither the bid nor other bid documents are sent with the resolution. In these instances, Corporation Counsel, relying on the certification of the Director, will sign the certification and submit the resolution *56 to Council for its action. Under this procedure, where the bid does not contain exceptions or deviations and is otherwise in order, Council does not receive the bid documents themselves with the proposed resolution, but rather relies on the certification signed by the Director and Corporation Counsel.
At the time plaintiff's bid was opened, the Director's supervisor, the Business Administrator, had recently been designated Acting Mayor following the death of Mayor Frank Graves ten days before. The position of Business Administrator was, therefore, vacant. Only the Director and one other employee staffed the Division of Purchasing. Despite prior communications from plaintiff during which it expressed its objections and despite the specific exceptions contained in exhibit C of the bid, the exceptions were not noted. The normal procedures which would have triggered review by Corporation Counsel of the actual bid documents were not followed. Rather, because the exceptions were missed, the bid was treated as a bid conforming to the bid specifications. Accordingly, the Director prepared a resolution awarding the contract and signed a certification that the "bid was found to be in order."
In explaining the reasons for failing to note the exceptions, the Director testified:
Very unusual circumstances. We were down to two people in an office that normally has many more and the circumstances of the City with the loss of the Mayor, we had a Business Administrator that was acting in that capacity at the time. There was near chaos, if you will, in the Department of Administration in the Division of Purchasing.
The number of bids that we had received were; also, substantial so there was a lot of work  to[o] much work and not enough people to do the work.
The Director also testified his division handled between 150 and 200 bidding processes, about 200 price quotations, and one hundred state contract items yearly.
The proposed resolution was forwarded to Corporation Counsel without the bid documents. Relying on the Director's certification, Corporation Counsel signed the certification and referred the resolution to Council for its action. At the time the resolution was signed, there is no evidence that Corporation *57 Counsel was aware of the actual exceptions, although there was evidence plaintiff had called the Law Department prior to the bid complaining about the bid specifications. However, the record shows no awareness on Council's part of any exceptions or that the actual bid, contrary to the certification on the resolution, did not conform to the bid specifications. Thus the resolution as adopted by Council on April 10, 1990 contains the following two "whereas" clauses:
WHEREAS, pursuant to the advertisement for the City of Paterson received bids for POLICE & FIRE COMMUNICATION NETWORK PROGRAM for the City of Paterson on 3/14/90 pursuant to the specification in accordance with the Public Contracts Law under the direction of the Business Administrator; and
WHEREAS, the Purchasing Agent recommends that the contract be awarded to the low bidder whose bid was found to be in order subject to an adequate appropriation in the 1990 Municipal Budget.
In addition and reflective of an unawareness of plaintiff's efforts to change the standard form of contract attached to the bid package, the resolution provides:
... that the Mayor and City Clerk be an[d] are hereby authorized to execute documents in a form approved by the Law Director.
The resolution, then, awarded a contract and authorized the Mayor and City Clerk to, on Council's behalf, enter into a written contract with plaintiff conforming to the bid specifications, including the requirement for a bid bond and the standard form of contract containing the remedies clause.
When such a contract was thereafter sent to plaintiff for its signature, plaintiff returned it signed, but without a bid bond and with the following designation after the remedies clause:
[*] See attached Exhibit C of March 14, 1990 proposal. The language of Exhibit C is the exception language previously quoted. This was unacceptable to Council and on June 26, 1990 it adopted a resolution rescinding the award of the contract to plaintiff and recommending rebidding. In doing so, the resolution contained the following "whereas" clauses:
WHEREAS, by Resolution dated April 10, 1990, the Municipal Council awarded a bid to Intertech Associates, Inc. to perform consulting services for the police and fire communication network program at a cost of $59,640.00; and

*58 WHEREAS, said Resolution incorrectly certified that the bid of Intertech Associates, Inc. conformed to the specifications; and
WHEREAS, the bid of Intertech Associates, Inc. contained material deviations from the specifications in that it failed to supply a bid bond or performance bond and further that it took exception to the form of contract governing remedies and damages in the event of a default; ....
In his letter opinion of July 19, 1991, the trial judge found the services to be "professional" and excepted from competitive bidding by N.J.S.A. 40A:11-5. He concluded, therefore, the City could award the contract as it believed would best serve the taxpayers. He found the City's conduct in rescinding the award unreasonable, and the remedies clause to be neither material to the agreement nor sufficiently important to make enforcement of the contract without that clause unconscionable. As such, he concluded there was no basis for Council to rescind the award. Thus, the trial judge ordered the June 26, 1990 resolution invalidated and directed the City to sign the contract already signed by plaintiff.
On appeal the City raises the following points:
I. INTERTECH'S BID IN RESPONSE TO THE CITY'S REQUEST FOR BIDS FOR THE POLICE/FIRE COMMUNICATIONS NETWORK PROGRAM CONSTITUTED MATERIAL AND SUBSTANTIAL DEVIATION FROM THE SPECIFICATIONS AND THUS WAS NOT A RESPONSIVE BID.
II. NO CONTRACT AROSE BETWEEN THE CITY OF PATERSON AND INTERTECH AS THE MUNICIPAL GOVERNING BODY WAS NOT ADVISED OF INTERTECH'S EXCEPTIONS TO THE TERMS OF THE CONTRACT.
III. THE AWARD OF CONTRACT BY THE APRIL 10, 1990 MUNICIPAL COUNCIL RESOLUTION WAS SUBJECT TO A CONDITION PRECEDENT.
IV. THE CITY OF PATERSON PROPERLY RESCINDED THE AWARD OF BID TO INTERTECH BASED ON THE CITY'S UNILATERAL MISTAKE.
V. THE SERVICES SOLICITED IN CONJUNCTION WITH THE POLICE/FIRE COMMUNICATIONS NETWORK DO NOT CONSTITUTE A PROFESSIONAL SERVICE UNDER THE NEW JERSEY PUBLIC CONTRACTS LAW.
VI. ASSUMING ARGUENDO THAT THE SERVICES IN QUESTION CONSTITUTED PROFESSIONAL SERVICES PURSUANT TO N.J.S.A. 40A:11-5, THE FORM OF THE RESOLUTION AWARDING THE CONTRACT WAS VOID.
*59 We conclude under the particular circumstances here the trial judge erred in his determination Council could not properly rescind the original award. We find it unnecessary, thus, to address the City's other points.
Preliminarily, we note, as plaintiff and the trial judge observed, the City did not assert an affirmative claim for rescission in its pleading. We do not, however, view that as significant. By Council's June 26, 1990 resolution, the award was rescinded. The complaint sought a declaration that that rescission was improper. Consequently, the City's answer contains as the basis for its various affirmative defenses precisely the grounds upon which it rescinded the contract. A separate counterclaim for rescission was not required.
Rescission is an equitable remedy and only available in limited circumstances. Even where grounds for rescission exist, however, the remedy is discretionary. Hilton Hotels Corp. v. Piper Co., 214 N.J.Super 328, 336, 519 A.2d 368 (Ch.Div. 1986). The court must be able to return the parties to the "ground upon which they originally stood." Id. (quoting Driscoll v. Burlington-Bristol Bridge Co., 28 N.J. Super. 1, 4, 99 A.2d 829 (App.Div. 1953)). See Hamel v. Allstate Ins. Co., 233 N.J. Super. 502, 506-507, 559 A.2d 455 (App.Div. 1989); Sempre Constr. Co. v. Tp. of Mt. Laurel, 196 N.J. Super. 204, 209, 482 A.2d 36 (Ch.Div. 1984).
While unilateral mistake of a fact unknown to the other party is not ordinarily grounds for avoidance of a contract, rescission in the context of public bids on the basis of unilateral mistake made in good faith has been afforded under certain circumstances. Cataldo Constr. Co. v. County of Essex, 110 N.J. Super. 414, 265 A.2d 842 (Ch.Div. 1970); Conduit & Foundation Corp. v. Atlantic City, 2 N.J. Super. 433, 64 A.2d 382 (Ch.Div. 1949). See also Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 407-08, 341 A.2d 327 (1975). "To qualify for the equitable relief sought, [the party] must show special circumstances justifying a departure from the generally *60 controlling principle that parties are bound by the contracts they make for themselves." Cataldo Constr. Co. v. County of Essex, 110 N.J. Super. at 418, 265 A.2d 842. These special circumstances have been described as: (1) the mistake must be of so great a consequence that to enforce the contract as actually made would be unconscionable; (2) the matter as to which the mistake was made must relate to the material feature of the contract; (3) the mistake must have occurred notwithstanding the exercise of reasonable care by the party making the mistake, and (4) the requested rescission cannot cause serious prejudice to the other party, except for loss of bargain. Conduit & Foundation Corp. v. Atlantic City, 2 N.J. Super. at 440, 64 A.2d 382.
In Conduit & Foundation, a successful bidder was granted rescission for unilateral mistake where an error caused the bid to be entered at $143,171 instead of $193,421. The next highest bid was $205,395. The error occurred as a result of the mistaken omission of a $50,250 item on the final estimate. Explanation for the error was that the two people who prepared the bid were tired, having worked on it for two days, and that each one thought the other had included the item in the final computations. Finding, nonetheless, a reasonable degree of care was exercised, notice of the mistake and attempt to withdraw the bid occurred before award, the mistake was material and rescission could be effectuated without serious prejudice to the governmental body, the court concluded the bidder could avoid his error by way of rescission.
In Cataldo Constr. Co. v. County of Essex, a bidder sought rescission of its bid along with return of a bid security after a mistake had caused it to bid $24,000 instead of $34,000. Because of difficulties in obtaining necessary quotations for the bid computation, the final computations were not done until the morning of the bid. In his haste, the bidder's estimator incorrectly copied certain sums from his work sheet onto the final form. Concerning the "troublesome issue of whether Cataldo exercised reasonable care in the preparation of its bid," the *61 court focused on the word "reasonable" and stated, "[w]hether the negligence of the mistaken party is of such a degree as to bar equitable relief depends in each case on the particular circumstances." Id. at 420-21, 265 A.2d 842. In Cataldo final figures (price quotations) had not been available until 10:00 a.m. on the day bids were due. The court concluded:
Though pressure of time is the only real excuse, or explanation, for plaintiff's error, my conclusion is that relief should be granted. Discovery of the mistake and the giving of notice were timely. Because of the delay in getting price quotations on materials the final bid figures were worked out and put in form for submission in an atmosphere of great haste. In that atmosphere the reporting of an incorrect figure seems normal enough to be excusable. Loss of all benefits of a bargain based on the mistake appears to be the only disadvantage to the county which will flow from the granting of relief.... When Cataldo gave notice of its mistake and refused to sign a contract at $24,233, new bids were advertised for promptly and resulted in a low bid by Cataldo [at substantially $34,233], that being in effect a corrected version of Cataldo's original bid ... [Id. at 422-23, 265 A.2d 842].
The court also noted that a substantial number of jurisdictions have been "strongly in favor of relief for the erring contractor" where the mistake was promptly discovered and brought to the attention of the public body before the execution of a formal contract, and where there is no substantial disadvantage to the solicitor of the bids other than loss of bargain. Id. at 423, 265 A.2d 842. We see no basis for a different conclusion when the erring party is the governmental body. Cf. Lord v. Mun. Util. Auth. Tp. Lower Cape May, 133 N.J. Super. 503, 508, 337 A.2d 621 (App.Div. 1975).
We think it plain the circumstances here meet the four necessary requirements to justify rescission of the award. Initially, we think it fairly evident the existence of the Remedies Provision was critical. In this respect, Clause 14 provides:
The Consultant recognizes that the services to be rendered hereunder are of a special, unique, unusual, extraordinary and intellectual character involving skill of the highest order which gives them a peculiar value, the loss of which damages could not adequately compensate. Consequently in the event of breach or disagreement by the Consultant the City shall be entitled to equitable relief through injunction and/or to any other legal or equitable remedies. Furthermore the City may recover by appropriate action the amount of the actual and consequential damages caused the City by any failure, refusal or *62 neglect of the Consultant to perform its agreements or services. The remedies provided in this paragraph shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy or remedies for the same event or in any event nor shall the specification of remedies herein exclude any right or remedies at law or in equity.
The purpose of such a remedies clause is to ensure that the contract will be performed and guaranteed according to the specified requirements. The undisputed trial testimony by Corporation Counsel was that such a clause is a standard requirement of all contracts entered into by the City and is contained in all form contracts. Since the City began using form contracts, Council has never awarded a contract without a remedies clause. Although the contract also contains an indemnification provision and plaintiff argues the City is protected by plaintiff's further obligation to obtain a $1,000,000.00 errors and omissions insurance policy, neither indemnification nor an insurance requirement ensures the City's ability to compel specific performance of the contract nor ensures the City's success on an action for damages in the event of nonperformance. As Clause 14 recites, the communications network services to be provided are "special, unique, unusual, extraordinary and intellectual" in character. Given the highly sophisticated, complex and unique nature of the services, the protection afforded to the City under Clause 14 is critical. Deletion of such protection would plainly constitute a material and significant deviation of bid specification such that imposition of such a contract upon the City and, ultimately, the taxpayers, would be unconscionable. Furthermore as Corporation Counsel testified, the remedies clause was particularly critical here because the performance bond requirement had been deleted at plaintiff's request.
Similarly, the mistake by the Director in failing to note the exceptions and thus treat the bid as a conforming bid relates to a material and important feature of the contract, i.e. Clause 14. Because, moreover, the judgment directing the City to enter into a contract with plaintiff has been stayed pending appeal, and thus no work has been performed, plaintiff suffers no *63 prejudice from the City's rescission, other than the loss of the contract. Furthermore, the June 26, 1990 resolution recommends rebidding and we assume plaintiff could again rebid. We note in this respect Council's apparent willingness to again award the contract to plaintiff but with Clause 14 intact. Plaintiff, thus, retains the ability to obtain the contract, albeit not on its own terms.
Plaintiff argues, and the trial judge concluded, the handling of the bid was without reasonable care. We disagree, given the particular circumstances. We note initially the City's practices and policies concerning handling of bids reasonably respond to normal administrative problems of understaffing and excessive workloads. We find nothing unreasonable or lacking in care in the practice of referring for review the actual bid documents on only those bids that contain exceptions or deviations, while sending only proposed resolutions with the certification that the bid conforms on those bids that have no exceptions. And, while the Director made a mistake here in failing to note the exceptions, we take into consideration the unusual circumstances then present. The Mayor had died ten days previously, the Business Administrator's office was vacant, the Director himself had a limited staff. Finally, on the day this bid was opened, three other major bids were opened. Furthermore, as to the exception to Clause 14 and plaintiff's argument that through its prior complaints and the clear designation on its bid proposal the Director knew or should have known of the exception to that clause, we note the language of the exception itself is not so clear as to what was intended. As we have previously pointed out, unlike its prior communications to the City that it would not enter into a contract with Clause 14, the actual pertinent language of the exception is:
... Intertech associates will accept a clause limiting damages to that covered by our $1,000,000.00. Errors and Omissions Policy.
This language could fairly be construed as excepting only to the provision in the remedies clause for unlimited actual and consequential *64 damages. This is a far different type of exception than that plaintiff claims it previously expressed to the City.[2]
Under these circumstances, we think the mistake of the Director in failing to note the exceptions and forward the bid to Corporation Counsel for his review was the product of as much care as there could have been in the mathematical errors in Conduit & Foundation Corp. v. Atlantic City and Cataldo Constr. Co. v. County of Essex. As did the mathematical mistakes permit rescission in those cases, so does the Director's mistake permit rescission here. As the Supreme Court has noted:
The "character and situation" of the appellants here was such as to prevail upon the trial court to allow the application of the doctrine of mistake. "Mistake," by its very definition, implies some degree of negligence. Human failing is its essence and it denotes error of judgment. However, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to set aside the sale. [Crane v. Bielski, 15 N.J. 342, 348, 104 A.2d 651 (1954)].
See also Hamel v. Allstate Ins. Co., 233 N.J. Super. at 508, 559 A.2d 455 (equitable rescission of release in automobile accident notwithstanding attorney's failure to obtain insurance company's approval).
We, thus, reverse the judgment entered on the complaint setting aside the July 26 resolution and directing the City to enter into the contract. The matter is remanded to the trial court for the entry of a judgment dismissing the complaint.
NOTES
[1] Under the Faulkner Act, the City of Paterson has adopted the Mayor-Council form of government. Pursuant thereto, it is Council which has sole authority to exercise legislative powers, including entering into contracts. N.J.S.A. 40:69A-36.
[2] Although not raised by either party, plaintiff's apparent present position that its bid was for a contract without any remedies clause and the more limited exception contained in the actual bid document could support a claim it too was mistaken concerning the precise scope of the exception. It could, thus, be argued rescission was appropriate because of both parties' mistaken understanding of the contract to be awarded, i.e. Council mistaken in its understanding the award was of its form contract containing Clause 14 in full, and plaintiff mistaken in its understanding the award was of the contract with either no Clause 14 or a limited Clause 14. Mutual mistake of fact may justify rescission. Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 549-50, 530 A.2d 1254 (App.Div. 1987). But see Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 608-09, 560 A.2d 655 (1989).