

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2004

# Raiczyk v. Ocean Cty Veterinary

Precedential or Non-Precedential: Precedential

Docket No. 02-1070

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Raiczyk v. Ocean Cty Veterinary" (2004). *2004 Decisions.* Paper 423.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/423

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-1070

———————

GARY RAICZYK,

Appellant

v.

OCEAN COUNTY VETERINARY
HOSPITAL;
DR. PETER M. FALK; DR. ALBERT M.
PAGANI;
GEORGE ELLIOT; MOKEL, VOGEL &
ELLIOT, A PROFESSIONAL
ASSOCIATION; PETER S. HENNES,
ESQ.;
BIELORY & HENNES, A
PROFESSIONAL CORPORATION;
DONALD COWAN; JOSEPH
GUNTESKI;
COWAN & GUNTESKI AND CO., A
BUSINESS ENTITY;
EDWARD F. LISTON, JR., ESQ.

———————

Appeal from the United States
District Court for the District of New
Jersey
(D.C. Criminal Action Nos. 98-cv-02892)
District Judge: Honorable Anne E.
Thompson

———————

Argued on October 14, 2003
Before: SLOVITER, ROTH and
CHERTOFF, Circuit Judges

(Opinion filed: July 30, 2004)

Mario A. Iavicoli, Esquire (Argued)
43 Kings Highway West
Haddonfield, NJ 08033

Counsel for Appellant

John E. MacDonald, Esquire (Argued)
Stark & Stark
993 Lenox Drive
Princeton Pike Corporate Center
P.O. Box 5315
Princeton, NJ 08543

Counsel for Appellees

———————

O P I N I O N

———————

ROTH, Circuit Judge:

A judge may overturn a jury verdict only when, "as a matter of law, 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" Dudley v. S. Jersey Metal, Inc., 555 F.2d 96, 101 (3d Cir. 1977) (quoting Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir. 1969)). In this case, the District Court overturned two awards granted by the jury. The jury awarded plaintiff, Dr. Gary Raiczyk, $113,431, for monies owed to him for sale of his shares in a professional corporation and an additional $22,500 to repay unpaid officer loans that Dr. Raiczyk had made to the corporation. The District Court ruled that, as a matter of law, Dr. Raiczyk was not entitled to either amount.

We do not agree with the District Court's conclusion that, as a matter of law, there was insufficient evidence in the record to support the finding that Dr. Raiczyk was entitled to the $22,500 for the unpaid officer loans. We do agree, however, that there was insufficient evidence to support the jury's verdict of $113,431 for Dr. Raiczyk's shares of stock. We will therefore affirm the District Court's disallowance of the award for the sale of the shares in the veterinary hospital, but we will reverse the District Court's judgment against Dr. Raiczyk on the $22,500 in officer loans, and we will remand this case to the District Court with instructions to reinstate the jury's verdict for that amount.

## I. Factual Background and Procedural History

The plaintiff, Dr. Gary Raiczyk, and the defendants, Dr. Albert Pagani and Dr. Peter Falk, practiced veterinary medicine at Ocean County Veterinary Hospital. The hospital was owned by OCVH, Inc., a professional corporation, in which Drs. Raiczyk, Pagani, and Falk were shareholders. The shareholder agreement between the parties called for a mandatory buy-out if one of the doctors wanted to leave the practice. On July 1, 1996, Dr. Raiczyk informed the other doctors that he wished to leave the practice and was exercising his option to sell his shares of stock in the corporation. After negotiations, all parties signed a sales agreement on December 31, 1996, which included arguably ambiguous terms as to how the final price for the shares would be calculated. The sales agreement contained an integration clause, stating that it was the final and only document memorializing the agreement. There was no mention in the sales agreement of the outstanding loans that Dr. Raiczyk claimed were owed to him by the corporation.

The doctors conducted various negotiations on the timing and final payment amount for the buyout. On April 17, 1997, pursuant to the sales agreement, Dr. Raiczyk was faxed a closing statement that set a total price of $206,975.21 for his shares. Dr. Raiczyk initialed this amount in two places, signed the document, faxed the closing statement back to the defendants' attorney that same day, and later had his signature on the document notarized.

Approximately six months later, Dr. Raiczyk concluded that he was owed more money under the agreement. On June 18, 1998, Dr. Raiczyk filed suit, asking that the court reform the contract due to mistake. He sued his former partners, demanding to be paid an additional $114,131.14 for the sale of his shares of stock. Dr. Raiczyk claimed that he was in a hurry on the day that he signed the closing statement, did not have the document reviewed by a lawyer or accountant, and thus only later caught the mistake. In addition, Dr. Raiczyk sought the money owed him for the still unpaid officer loans in the amount of $45,000. Defendants responded that Dr. Raiczyk was paid the full amount agreed upon for his shares and that the officer loans were included in the sales price. They argued that the integration clause in the sales agreement clearly covered those loans.

2

The matter was tried before a jury, and on September 13, 2001, the jury returned a verdict in favor of Dr. Raiczyk on both issues. On December 3, 2001, however, the District Court ruled as a matter of law under Federal Rule of Civil Procedure 50(b) that the jury verdict was set aside and that the cause of action dismissed with prejudice. The District Judge explained in her ruling that Dr. Raiczyk had not offered any documentation of the officer loans, including when the loans would be paid back or if interest would accrue; she concluded that there was not enough evidence in the record to support existence of the loans. The District Judge also ruled that even though the sales agreement may have been unclear as to the final price of the shares of stock, the April 17th closing letter was unambiguous. Dr. Raiczyk's argument that he had mistakenly signed the closing letter in a hurry did not qualify for application of the doctrine of unilateral mistake and did not warrant reformation of the contract.

Dr. Raiczyk appealed.

## II. Jurisdiction and Standard of Review

Jurisdiction in the United States District Court for the District of New Jersey was based on 28 U.S.C. §1332. We have jurisdiction over the appeal pursuant to 28 U.S.C. §1291.

Our review of a district court's grant of a judgment as a matter of law under Fed.R.Civ.P. 50(b) is plenary. Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001). Such a judgment should only be granted if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Id. (quoting Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir. 1985)). Furthermore, in reviewing the District Court's ruling, we "must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference." Dudley v. S. Jersey Metal, Inc., 555 F.2d 96, 101 (3d Cir. 1977) (quoting Fireman's Fund v. Videofreeze Corp., 540 F.2d 1171, 1178 (3d Cir. 1976)).

## III. Discussion

We must decide whether the District Court was correct in concluding that there was not a minimum quantity of evidence to support the jury's verdict with respect to the sale of Dr. Raiczyk's shares and his claim of unpaid officer loans. As discussed more fully below, because the language of the closing statement is so clear, we conclude that the District Court was correct in overturning the jury's verdict with respect to the sales amount. Dr. Raiczyk should not be paid more than the price listed in the closing statement. However, we find there is enough evidence to support the verdict with respect to Dr. Raiczyk's unpaid officer loans and we will reverse on that issue.

## A. The Purchase Price

In the April 17, 1997, closing statement, the amount Dr. Raiczyk was to receive for his shares was clearly stated as $206,975.21. Dr. Raiczyk initialed this amount, initialed the net total on the second page, signed the bottom of the two-

page document, and had the document notarized. Dr. Raiczyk claimed that he made a mistake when he initialed and signed this document, arguing that he did so in a hurry, without the aid of a lawyer or accountant. The jury was persuaded, and awarded him $113,431 in compensation for his shares. The District Court, however, ruled that Dr. Raiczyk did not satisfy his legal burden of establishing why the contract should be reformed. The court found that there was no evidence of fraud and that Dr. Raiczyk's mistake did not fall under the doctrine of unilateral mistake.

When considering a document that is as clear as is the closing statement in this case, it is rare that such a document will be reformed by a court. First and foremost, it is well settled that signing a contract creates a "conclusive presumption that the signer read, understood, and assented to its terms." Fleming Cos. Inc. v. Thriftway Medford Lakes, Inc., 913 F. Supp. 837, 842-43 (D.N.J. 1995). If the terms of the contract are clear, a court's interference could undermine the stability of contract negotiations. For that reason, if one of the parties has made a mistake, reformation is not automatically granted, but is available only at a court's discretion. Intertech Assocs., Inc. v. City of Paterson, 604 A.2d 628, 631 (N.J. Super Ct. App. Div. 1992). The power of reformation should be used only when the mistake is material, when there would not be prejudice to the other party (besides the loss of the bargain), and upon a showing that the plaintiff exercised reasonable care. Fleming Cos. Inc., 913 F. Supp. at 843;

Lowenschuss v. Resorts Int'l, Inc., 181 F.3d 505, 512 (3d Cir. 1999) (requiring that the mistake must have occurred "notwithstanding the exercise of reasonable care") (quoting Intertech, 604 A.2d at 632). We see from the facts as stated above that Dr. Raicyzk's mistake does not rise to this very high standard.

Dr. Raiczyk cites a number of contract bidding cases where rescission or reformation based on unilateral mistake was granted, but the harried and urgent nature of those situations is not present here. For example, in Intertech, 604 A.2d 628, the court did reform the contract due to mistake, but that was only because the office was short-staffed, the language in the contract was ambiguous, the bid had to be completed in a very short amount of time, and the head of the office, the mayor, had just died. None of these factors parallels Dr. Raiczyk's situation. In a less extreme case, a court also granted reformation in Cataldo Construction Co. v. County of Essex, 265 A.2d 842 (N.J. Super. Ct. Ch. Div. 1970), where the only excuse was the time pressure of compiling a complex bid quickly. Id. at 846-47. However, Dr. Raiczyk was not in a similar time-pressured situation, despite his counsel's dramatic remark that one of the defendants "put a gun to his head." As noted by the District Court in ruling on the post-trial motions, Dr. Raiczyk admitted on the stand that he did not have to sign the settlement sheet for seven more days and could have simply put off the closing. In addition, unlike a company bidding for a contract, Dr. Raiczyk did not have to make multiple calculations in a short

4

amount of time. Dr. Raiczyk knew what the amount should be, and all he had to do was read the amount on the closing statement and see if it matched the amount with which he had previously agreed. We will therefore affirm the District Court's ruling setting aside the jury's award with respect to the sale of Dr. Raiczyk's shares.

**B. The Officer Loans**

The District Court also set aside the jury's award of $22,500 to Dr. Raiczyk for unpaid officer loans. The District Court ruled that the plaintiff "offered no documentation of his own with respect to the loan[s]," noting in particular that there was nothing in the record to indicate "when the money was to be paid back" or "whether there was interest on the loan." Alternatively, the defendants also argued in the District Court that the integration clause in the sales agreement clearly covered the loans. Thus, even if the loans did exist, they were included in the agreed upon sales price for the shares. We conclude, however, that the integration clause does not clearly cover the loans and that there is ample evidence in the record for a jury to find that Dr. Raiczyk is still owed these amounts.

We consider first the defendants' argument that the integration clause in the sales agreement precludes us from looking at other evidence in the record. Defendants rely on Filmlife, Inc. v. Mal "Z" Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. App. Div. 1991), to argue that, given the integration clause, non-documentary evidence of the loans cannot be considered. Filmlife, however, merely invoked the parol evidence rule. Id. The parol evidence rule is applicable only if we find as a matter of law that the integration clause clearly covers the officer loans. The loans are not mentioned anywhere in the sales agreement. Defendants argue that, because the loans are not mentioned, they should not be considered separately from the sales agreement. Usually, however, when a contract does not mention a subject, it is because the contract was not meant to cover that subject. At the very least, a reasonable jury could have found that the loans were not meant to be included in the computations of the sales agreement.

Because the jury could reasonably have held that the integration clause does not end the inquiry, we turn to the ruling of the District Court that there was no evidence in the record of when the loans were to be repaid or at what interest rate. While this may be true, we know of no authority under New Jersey law that voids a loan if it does not have these two characteristics. An officer who lends money to a corporation has the same rights and obligations as any other person who lends it money. The fact that Dr. Raiczyk did not earn any interest on the loans does not void them and, in fact, erases any questions regarding the propriety of an officer lending money to his corporation. Additionally, the fact that there is not a document evidencing the loan does not defeat Dr. Raiczyk's case as the Statute of Frauds does not apply to such a loan. See N.J. Stat. § 25:1-5(f) (2003) (stating that only loans in excess of $100,000 and made by a person whose business it is to extend

5

credit or loans fall under the Statute of Frauds).[1] In short, there is nothing wrong with proving the existence of Dr. Raiczyk's officer loans through testimony and the corporation's books, both of which were offered into evidence.

In light of the entire record in this case, the jury had ample evidence to conclude that the officer loans were due Dr. Raiczyk. In his testimony, Dr. Raiczyk specifically averred that he personally lent $45,000 to Ocean County Veterinary Hospital over a long period of time beginning in 1992. Furthermore, he testified that he paid taxes on those loans. Dr. Raiczyk said unequivocally that he was never repaid those amounts. He also testified that they were bona fide loans and not a result of creative bookkeeping. Finally, Ocean County Veterinary Hospital's books and records were put into evidence, which clearly showed the loans' existence. This evidence certainly surpasses the "minimum quantity of evidence" necessary to uphold a jury verdict on the issue. Trabal, 269 F.3d at 249. Therefore we will reverse the District Court's disallowance of recovery of these loans and we will remand the case with instructions to reinstate the $22,500 jury award for the unpaid officer loans.

### IV. Conclusion

For the reasons stated above we will affirm the judgment of the District Court with respect to the sale of the partnership interest, but we will reverse and remand the case with respect to the unpaid officer loans with instructions to reinstate the jury's verdict of $22,500 for the unpaid loans.

---

[1] Moreover, the Statute of Frauds is an affirmative defense, and there is no indication that it was pled or formed the basis of the District Court's decision.

6